DAVID L. BARTLETT and HORACE W. ROBBINS, Garnishees of the ILLUMINATED TILE COMPANY *vs.* JAMES M. WILBUR.

*Additional Plea by Garnishees, after Confession of Judgment by Defendant, that a Receiver had been appointed for the Defendant a Corporation in New York, and that the Indebtedness was thereby transferred, not Good—Questions of Evidence—Certified copy of Incorporation of a Foreign Corporation—Sufficient Account annexed to Affidavit for an Attachment.*

In January, 1876, W. sued out an attachment against the I. T. Co., and laid it in the appellants' hands as garnishees. They appeared and pleaded *non assumpsit* for the company, and *nulla bona* for themselves. In November, 1876, the company appeared by attorney and confessed judgment. The garnishees, subsequently filed an additional plea, alleging, that in October, 1876, a receiver had been appointed by the Supreme Court of New York for the company, and thereby the indebtedness of the garnishees to the company was transferred, and became an indebtedness to the receiver. To this plea W. demurred. HELD:

That the demurrer was properly sustained.

W. at the trial offered in evidence what purported to be a copy of an assignment by him to the I. T. Co., of a contract with the garnishees to furnish them a certain quantity of illuminated tiling, to be used in the construction of public buildings in New York City, which assignment W. had testified, had been made by him to the I. T. Co., and was at one time in his possession, but "he could not find it, although he had made search for it." It appeared that the garnishees recognized the validity of the assignment, and dealt with the I. T. Co., as assignee under it; but that the copy offered in evidence transferred to the I. T. Co. not only W's right under the contract to furnish the tiling, but also all indebtedness due to W. under the contract for tiling furnished prior to the assignment. HELD:

1st. That the copy was inadmissible, as W. had not laid the foundation for the admission of secondary evidence.

2nd. That the fact that the garnishees recognized the validity of the assignment, proved the relation of debtor and creditor between the garnishees and the I. T. Co. for materials furnished by the latter after the assignment.

W. offered in evidence the garnishees' answer in a suit by the New York B. & P. Co., in which they admitted notice of the assignment from W. to the I. T. Co. HELD:

That the answer was admissible for the purpose of proving notice.

The I. T. Co. having confessed judgment in favor of W., evidence was inadmissible to show that the company was insolvent and a receiver appointed, and that no debt was due to W., nor due by the garnishees to the company, as in this attachment case the only issue before the jury was, whether the garnishees had anything in their hands as debtors to the I. T. Co. liable to garnishment.

The garnishees offered in evidence a paper purporting to be an affidavit before " M. C. G., justice, &c.," made by W. in New York City, in a judicial proceeding of some kind, not authenticated by the Court's seal, and not showing the official character of the person before whom it was made. The Court below admitted it, but only as evidence to contradict W. The garnishees excepted. HELD:

That the paper was inadmissible for any purpose; and that if it had been admissible at all, the Court below erred in restricting the purpose for which it might be used.

The New York Statute under which the I. T. Co. claimed to have been incorporated, provides, that the certificate of incorporation shall be filed in "the Clerk's office of the county in which the business of the company shall be carried on, and a duplicate thereof in the office of the Secretary of State." The statute further provides, that the copy of any certificate of incorporation "filed in pursuance of this act, certified by the County Clerk or his deputy to be a true copy, shall be received in all Courts and places as presumptive legal evidence of the facts therein stated." The copy offered in evidence did not show that a duplicate had been filed in the office of the Secretary of State, but the copy was certified by the County Clerk. It appeared that the garnishees recognized, dealt with, accepted and paid drafts drawn by the I. T. Co. after its incorporation. HELD:

That the copy was evidence of the company's incorporation, and that the garnishees were in no position to deny the corporate existence of the I. T. Co.

Evidence offered by the garnishees tending to prove an assignment by W. to one B. prior to the assignment to the I. T. Co., and also that materials were furnished by B. under it, was admissible, as in such case the garnishees could not be indebted to the I. T. Co. for materials furnished by B. unless the contract had been re-assigned by B. to W., a question for the jury.

The account annexed to the affidavit on which an attachment on warrant issued was as follows:

The Illuminated Tile Company

To James M. Wilbur, Dr.

To the following materials, labor, services, &c., furnished in connection with work·done on the New York Post Office, from August 11, 1874, to February 27, 1875:

| | |
|---|---:|
| Glass | $4,087 99 |
| Iron | 8,595 35 |
| Rubber | 3,476 10 |
| Paints | 336 43 |
| Labor | 5,861 07 |
| His salary superintending and designing work 12 months, at $300 per month | 3,600 00 |
| | $25,956 94 |

HELD: That this account was sufficient.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the plaintiff to sustain the issues on his part, gave in evidence an agreement between him and the garnishees which is sufficiently stated in the opinion; also a certificate of incorporation of the Illuminated Tile Company, and the corporation laws of the State of New York from 2 *Rev. Stat.* 500, *sec.* 19. The plaintiff then produced the plaintiff himself as a witness,

who testified that he was the person with whom the contract given in evidence was made; that he executed the entire work as contemplated in the contract; that he had been paid seven or eight thousand dollars in different payments while the work was progressing; that he had made an assignment of the contract to the Illuminated Tile Company, which he had in his possession, but could not find it, although he had made search for it; that he had done extra work in replacing two plates on Broadway, and three plates on the roof, at the price of $300.00; that he had furnished a drill at $35.00, to the agent of Bartlett, Robbins & Co.; that he had what states to be a copy of the original assignment. The plaintiff then offered to give said paper in evidence, which is as follows:

" For value received, I hereby sell, assign, transfer and set over to 'The Illuminated Tile Company,' of the City of New York, State of New York, the foregoing contract, and all my right, title and interest in and to the same, together with all moneys due or to grow due thereon, with the interest, and all benefits and advantages in any manner arising thereform. In witness, I hereunto set my hand and seal, this 18th day of February, 1875.

"JAMES M. WILBUR," [+.]

The garnishees objected; the Court (DOBBIN, J.) overruled the objection and admitted the paper in evidence; to which ruling the garnishees excepted.

*Second Exception* —The paper was then read in evidence to the jury, the plaintiff then put in evidence an answer of the garnishees filed on the 29th February, 1876, to interrogatories in an attachment suit of the *New York Belting and Packing Company vs. James M. Wilbur*, instistituted on the 29th January, 1876. The answer is as follows:

To the first of said interrogatories these respondents say, that on or about the 11th of August, 1874, they, con-

tracted and agreed with James M. Wilbur, that they would purchase and take from him, and that he would furnish and sell to them, " all the illuminated tiling required for the United States Post Office and Court House, then being built at the City of New York," according to the specifications and at the prices set forth in said agreement; a copy of which is hereto annexed; that after the making of said agreement, the said James M. Wilbur entered upon the discharge of the obligations assumed by him therein, and for a considerable time, either in his own name or under the name of the Wilbur Manufacturing Company, furnished portions of the tiling specified in said agreement; that in February, 1875, as these respondents are informed, the said James M. Wilbur executed an assignment of all his rights and interests under said agreement, to The Illuminated Tile Company, and that in April, 1875, there was served upon these respondents a paper, which purported and was certified to be a copy of said assignment, together with a notice signed by " W. J. Nichols, President of the Illuminated Tile Company, and L. M. Northrop, Secretary," notifying these respondents that " all payments due or to grow due on said contract, must be made to the said company." That said copy of assignment so served on these respondents, was in the words following (this copy is already set forth.)

That these respondents do not know the legal force or effect of said assignment, or the legal relation or connection, if any, between said James M. Wilbur and said Illuminated Tile Company, but said tiling contracted for in said agreement, continued to be furnished until the same was completed. That the account for said tiling and work furnished and done, under said contract or agreement with said Wilbur, is unadjusted, and the precise amount thereof these respondents do not know, (but they believe it will amount to between $32,000 and $33,000,) and that prior to said assignment they had paid to or

for said Wilbur, on account thereof, the sum of about $9000.00, leaving, as they believe, a balance due, or to become due, to whomsoever may be lawfully entitled to receive the same, of between $23,000 and $24,000, but that the said tiling and work specified and contemplated by said agreement, has not yet been approved and accepted by the superintendent, assistant superintendent, and supervising architect of the said building, and is not properly due or payable until such approval and acceptance, but upon such approval and acceptance, the said sum of between $23,000 and $24,000, growing out of said contract and assignment, will be due and payable to whomsoever the Court shall say is lawfully entitled to receive the same.

To which the garnishees objected, but the Court overruled the objection and admitted the answer, as evidence of their notice of an assignment which supplemented the testimony of the plaintiff, and said to the jury that the answer was competent to bind Bartlett and Robbins to the extent to which they declared their knowledge of it. The garnishees excepted to this action of the Court.

*Third Exception.*—The plaintiff then gave further evidence; and afterwards he himself testified that he held 997 shares of 1000 shares of the Illuminated Tile Company, and was the president thereof. On cross-examination the plaintiff stated, that the 997 shares were issued to him in February, March or April, 1875, and had never been assigned by him to any one. He was then asked how he paid for the stock, but objected to the question. The garnishees stated that the question was asked because they proposed to prove that the corporation was insolvent, and a receiver thereof had been appointed as of an insolvent corporation, and that there was no debt due to the plaintiff, as alleged in the affidavit accompanying the warrant for attachment in this case, by the Illuminated Tile Company, at the time when it fraudulently confessed

judgment in the case, and that there was no debt due by the garnishees to the Illuminated Tile Company. But the Court sustained the objection, and refused to allow the question to be asked of the witness; to which ruling the garnishees excepted.

*Fourth Exception.* — And then the plaintiff himself further testified, and produced other evidence in his behalf. The garnishees to sustain the issues on their part produced several witnesses, and then offered in evidence an affidavit of James M. Wilbur as follows:

I am the defendant in this action; I reside at 51 West 9th street, New York City; I am a general mechanic, have no place of business of my own; I work for Mr. D. W. Bain; he is an attorney; he carries on the shop at 114 Centre street; I have been working there four or five months; I never owned any of the property there; Mr. Bain is the sole owner of it; I think it was September or October that I first went there; there is no price agreed upon for my compensation; I am paid by Bain; he pays me as he can spare the money; there is no price set; he gives me only as much as I need to live on; it is about $100 a month; Bain is working for the Government; doing work on the New York Post Office; making skylights and vault covers; Bain has a sub-contract; the contract was made by me and assigned to Bain; I think it was made in August with Bartlett, Robbins & Company, and assigned to Bain during the same month; I received my present position in consideration of the assignment; I assigned the patents to Bain when I assigned the contract to him; I owed a great deal at the time I made these assignments to Bain, probably $1000 or $1500; there are two or three judgments against me; there are no debts due or that I expect to get; I was not in any particular business before that; I spent the last winter in Washington; I was working on the contracts before Bain took hold of them; I had my work done at St.

John L. McVey's; I also owe $1300 more than I have mentioned; I have no interest whatever now in the contract or patents.

                                        J. M. WILBUR.

Subscribed and sworn to before me, Feby. 9, 1875.

                                        MICHAEL C. GROSS,
                                                Justice, &c.

The plaintiff objected; the Court admitted the affidavit, but only as evidence to contradict the witness. The garnishees excepted to this ruling of the Court, thus restricting the purpose for which the affidavit might be used.

*Fifth Exception.*—The garnishees then offered to prove, that more than one third of the work, under the contract, was done prior to the assignment by James M. Wilbur to the Illuminated Tile Company; but the Court, on the objection of the plaintiff, refused to admit the evidence; the garnishees excepted.

*Sixth Exception.*—The garnishees then offered ten prayers of which it is necessary to set out only the following:

5. That although the jury find that James M. Wilbur executed the assignment to the Illuminated Tile Company, of which the paper-writing given in evidence in this cause is a copy, yet if they shall further find from all the evidence in this cause that the said James M. Wilbur, in August, 1874, assigned the contract with Bartlett, Robbins & Co., given in evidence in this cause, to D. W. Bain, then the plaintiff is only entitled to recover for the materials furnished and work done after the execution of the first mentioned assignment, after deducting the money, if any, which they may find to have been paid to the Illuminated Tile Company, or its order, and the burden of proof is on the plaintiff to show the amount of the materials so furnished and of the work so done.

6. That although the jury find that James M. Wilbur executed the assignment to the Illuminated Tile Company,

of which the paper-writing given in evidence in this cause is a copy, yet if they shall further find from all the evidence in this cause, that the said James M. Wilbur, in August, 1874, assigned the contract with Bartlett, Robbins & Co., given in evidence in this cause, to D. W. Bain, and that the said D. W. Bain never re-assigned the same to James M. Wilbur, then the plaintiff is only entitled to recover for the materials furnished and work done, after the execution of the first mentioned assignment, after deducting the moneys, if any, which they may find to have been paid to the Illuminated Tile Company, or its order, and the burden of proof is on the plaintiff to show the amount of the materials so furnished and of the work so done.

8. That the plaintiff is not entitled to recover in this case, because no sufficient account was produced before the Commissioner at the time of the taking of the affidavit on which the warrant in this case was issued.

The garnishees withdrew their second prayer; the plaintiff conceded their third and ninth prayers; the Court granted the seventh and tenth as offered, but rejected the first, fourth, fifth, sixth and eighth of said prayers, and refused to instruct as therein prayed; to which refusal the garnishees excepted.

*Seventh Exception.*—After the argument before the jury was closed, the Court said to the jury, that in this class of cases there were usually two issues submitted to them, viz., one as to the amount due from the defendant to the plaintiff; and the other as to the amount due from the garnishee to the defendant, but in this case the judgment confessed by the defendant in favor of the plaintiff, had disposed of the first issue, and on that they must find that the defendant is indebted to the plaintiff in the sum of $18,982.95. The garnishees excepted to this instruction; and the jury having rendered a verdict for the plaintiff for $18,982.95 on the first issue, and for $6638.96 on the second issue, the Court rendered a judgment of condemna-

tion against the garnishees in favor of the plaintiff for $6638.96 with interest and costs. The garnishees appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER, ROBINSON and IRVING, J.

*Bernard Carter* and *Henry Stockbridge,* for the appellants.

*J. C. Fay* and *William M. Merrick,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

In January, 1876, the appellee Wilbur sued out an attachment against " The Illuminated Tile Company," and laid it in the hands of the appellants as garnishees.

The garnishees appeared, and pleaded *non assumpsit* on behalf of the Tile Company and *nulla bona* on their behalf.

In November following, the defendant corporation appeared by its attorney, and confessed judgment for $18,982.95.

The garnishees subsequently filed an additional plea, alleging that in October, 1876, a receiver had been appointed by the Supreme Court of New York for said corporation, and thereby the indebtedness of the garnishees to the Company was transferred and became an indebtedness to the said receiver.

To this plea, the plaintiff demurred, and the Court below sustained the demurrer.

Strictly speaking the powers and functions of a receiver for the purposes of litigation are limited to the Courts of the State within which he was appointed; and he has no extra-territorial jurisdiction or power to institute suits in another State for the recovery of property due the person or estate subject to the receivership.

In *Booth vs. Clarke*, 17 *How.*, 322, referring to the powers of a receiver, the Supreme Court say:

" He has no extra-territorial power of official action; none which the Court appointing him can confer with authority to take possession of the debtor's property; none which can give him upon the principle of comity a privilege to sue in a foreign Court or another jurisdiction."

In some States it is true, he has been permitted upon the principle of comity to file claims and receive money due the estate, but he has never been allowed by a foreign Court to interfere with its jurisdiction, which had attached prior to his appointment. Here the proceedings in attachment were instituted long prior to the appointment of a receiver, and the demurrer was therefore properly sustained.

The first exception presents a question in regard to the admissibility of secondary evidence. The plaintiff by contract in writing had agreed to furnish the appellants with a certain quantity of *" illuminated tiling,"* to be used in the construction of public buildings in New York City.

This contract he testified had been assigned by him to the Tile Company, and that the assignment was at one time in his possession, but " he could not find it, although he had made search for it." It was then proposed to offer in evidence a paper purporting to be a copy of the original assignment, to which the defendants objected.

To lay the foundation for secondary evidence it was necessary to prove that he had made a *diligent and unsuccessful search* for the original paper in the place or places where it was most likely to be found.

The degree of diligence necessary, it may not be easy to define, as each case must in a measure depend on its own peculiar circumstances. As a general rule, however, it must appear that the party has in good faith exhausted in a reasonable degree, all the sources of information and means of discovery, which were accessible to him, and which the nature of the case would naturally suggest.

If the instrument be one of importance, and such as the owner had a direct interest in preserving, greater diligence should be required than in cases where the paper is of little or no value, in the preservation of which, one is not expected to exercise such care.

In this case the indebtedness of the Tile Company to the plaintiff, and the indebtedness of the garnishees to the Company, was founded upon this assignment, and it was therefore a paper of the utmost importance to the plaintiff as well as to the Company. Under such circumstances as these, merely saying "that he had searched for it and could not find it," without stating whether the search was made in such places as it was usually kept, and without stating the degree of diligence used in making the search, was not sufficient in our opinion to lay the foundation for the admission of secondary evidence. Such preliminary proof did not show that he had made a diligent search and had reasonably exhausted all the sources of information ordinarily accessible to him.

It was argued, however, even conceding the Court erred in this respect, no injury was done to the garnishees, because the record shows they recognized the validity of the assignment, and upon the faith of it dealt with the Tile Company as assignee under it. This was sufficient it is true, to prove the relation of debtor and creditor between the garnishees and the Company for materials furnished by the latter after the assignment. But the copy of the assignment offered in evidence goes further than this, and transfers to the Company not only the assignor's right under the Bartlett contract to furnish the tiling, but also all indebtedness due to him under the contract for tiling furnished prior to the assignment. This involved the nature, character and terms of the assignment itself, and to prove these it was necessary to offer in evidence either the assignment itself, or if it was lost or could not be found, to prove its contents by secondary evidence.

In the second exception, the plaintiff offered in evidence the answer of the garnishees filed in a suit by the New York Belting and Packing Company, in which they admitted notice of the assignment of the Bartlett contract by the plaintiff to the Tile Company. Their answer was clearly admissible, for the purpose of proving such notice, and there was no error in the ruling of the Court in this exception. The Court was also right in sustaining the objection to the question asked the witness in the third exception. The judgment confessed by the Tile Company in favor of the plaintiff, was an admission of its indebtedness to him, and in an attachment by the latter against the appellants as garnishees of the judgment debtor, the question of indebtedness by the Company to the plaintiff was no longer an open question. The judgment was conclusive as to this matter, and under the plea of *nulla bona*, the sole issue before the jury was, whether the appellants had anything in their hands as debtors to the Tile Company, liable to garnishment.

In the fourth exception the garnishees offered in evidence a paper purporting to be an affidavit, made by the plaintiff in New York City, on February 9th, 1875, before one "Michael C. Gross, justice, &c.," and this the Court permitted to go to the jury for the purpose only of contradicting the testimony of the plaintiff. The garnishees have no reason to complain of this ruling, because it was inadmissible for any purpose. The affidavit upon its face, appears to have been made in a judicial proceeding of some kind, but it is not authenticated by the seal of the Court, nor is there anything to show the official character of the person before whom it was made. If admissible, however, at all, we agree with the appellants that the Court erred in ruling it could be offered only for the purpose of contradicting the testimony of the plaintiff. There is a wide difference between the declarations of an *ordinary witness*, a stranger to the suit, and the declarations of a

party to the record. The former are admissible only for the purpose of impeaching or contradicting the witness, but the latter being the admissions of the party to the suit may be offered to prove the truth of the matters thus admitted. 1 *Greenleaf's Evid., sec.* 171.

The fifth exception will be considered in connection with the several instructions offered by the appellants.

The New York statute, under which the Tile Company claims to have been incorporated, provides that the certificate of incorporation shall be filed in "the clerk's office of the county in which the business of the company shall be carried on, and a duplicate thereof in the office of the Secretary of State." It does not appear from the copy of incorporation offered in evidence, that a duplicate of the certificate was filed in the office of the Secretary of State, and the garnishees contend therefore, there was *no evidence* of the Company's incorporation. The statute, however, further provides, that the copy of any certificate of incorporation "filed in pursuance of this Act, certified by the county clerk or his deputy, to be a true copy, shall be received in all Courts and places as presumptive legal evidence of the facts therein stated." It is clear then that the certificate offered in this case would have been evidence of the existence of the corporation in the Courts of New York; and if so, it is well settled that the certificate thus duly certified will be received in the Courts of another State to prove the fact of such incorporation. *Angell & Ames on Corporations, sec.* 635, and cases cited. Moreover, the garnishees recognized, dealt with, accepted and paid drafts drawn by the Tile Company after its incorporation, and it may be well questioned whether under such circumstances it was competent for them to deny the corporate existence of the Company, in a suit by an attaching creditor, against them as debtors to the Company.

In considering the fifth and sixth prayers it will be necessary to refer briefly to the evidence upon which they are based. The appellee, Wilbur, claims to have assigned the Bartlett contract to the Tile Company, in February, 1875, and that subsequent thereto the tiling was furnished by the Company to the garnishees. These prayers are based upon the theory that prior to the above assignment, the appellee had in fact assigned the contract to one D. W. Bain, and the garnishees were therefore indebted to Bain for the tiling furnished by him, and not to the Tile Company, unless there was a re-assignment of the contract by Bain. There was evidence tending to prove the facts upon which these prayers are founded, and this evidence ought to have been submitted to the finding of the jury.

In the first place, the plaintiff, Wilbur, admits that he had assigned the Bartlett contract to Bain, although he says at the same time that it was re-assigned by him.

In addition to this, T. M. Lockwood, attorney-at-law, testifies that he prepared the paper purporting to be an affidavit by the plaintiff, before Michael C. Gross, justice, and which was offered in evidence in the fourth bill of exceptions, and that the plaintiff admitted in his presence the truth of the facts therein stated. Now the plaintiff in this paper admits that he assigned the Bartlett contract to Bain in August, 1874, nearly six months prior to the assignment of the same contract to the Tile Company; that he had no interest whatever in the contract, and was merely employed by Bain to do the work at one hundred dollars per month. These admissions were made on the 9th of February, 1875, nine days before the assignment under which the Tile Company claims. Now, although the paper itself was not admissible in evidence as an affidavit of the plaintiff, because it was not duly authenticated, yet it was competent for the appellants to prove by

the witness Lockwood, that the plaintiff admitted in his presence the facts stated in the affidavit.

Here then is evidence, without meaning to intimate any opinion in regard to the weight of it, tending to prove not only a prior assignment to Bain, but also that materials were furnished by him under it.

Whether the assignment to Bain was made in good faith, or merely for the purpose of defrauding the plaintiff's creditors, by concealing his interest under it, were questions for the jury.

It is true there is no evidence that the appellants had notice of this alleged assignment to Bain, or recognized in any manner his rights under it.   But it must be borne in mind, that the plaintiff is seeking to recover by his attachment against the appellants, as garnishees of the Tile Company, not only for materials furnished by the company to the garnishees *after* the date of its assignment of the Bartlett contract, but also for materials furnished *prior thereto*, the indebtedness for which by the garnishees, the plaintiff claims passed to the company under its assignment.

If the Bartlett contract, was in point of fact, assigned to Bain, prior to the assignment by the plaintiff to the Tile Company, it is clear the garnishees could not be indebted to the company for the materials furnished by Bain, unless his interest under it was re-assigned.   And these were questions for the jury.   The finding of these facts was submitted by the sixth prayer, and it ought therefore to have been granted.   And for the same reasons, the evidence offered in the fifth exception ought to have been admitted.   The fifth prayer, however, did not submit to the jury the question of re-assignment, and there was no error therefore, in refusing to grant it.

The eighth prayer presents a jurisdictional question. The following is a copy of the account annexed to the affidavit upon which the attachment was issued:

" The Illuminated Tile Company,

To James M. Wilbur, Dr.

To the following materials, labor, services, &c. furnished in connection with work done on the New York Post Office, from August 11, 1874, to February 27, 1875 :

| | |
|---|---:|
| Glass .........................................$ | 4,087.99 |
| Iron......... ....... .......... ............. .... | 8,595.35 |
| Rubber ....................... ................ ... | 3,476.10 |
| Paints........................... .... ... ..... | 336.43 |
| Labor. ................... ......... ............. ..... | 5,861.07 |
| His salary superintending and design-<br>ing work 12 months, at $300 per<br>month........... .................. ..... | 3,600.00 |

$25,956.94

Art. 10, Sec. 4, of the Code provides, that the creditor at the time of making the affidavit, shall produce the bond, account or other evidence of debt ; and it is contended that the above account is defective, because the precise quantities of glass, rubber, iron, &c., are not itemized. The amount due for each of the items is set forth, and the building for which they were furnished is specifically referred to, and the time during which the appellee was employed in doing and in superintending the work is stated. It was necessary of course to prove at the trial, the precise quantity of each of the articles charged in the account, but this it was not necessary to state in the account, annexed to the affidavit upon which the attachment was issued. Before proceeding to trial, the garnishees had the right to demand a bill of particulars, and in a case like the present, where the building is referred to, the garnishees were in no manner injured by the failure to state the precise quantity of each of the materials used in its construction.

As we have said, in a former part of this opinion, the confession of judgment by the Tile Company, was conclu-

sive as to the question of its indebtedness to the plaintiff, and the Court was right in instructing the jury that it was no longer an issue between the parties.

Nor was there any error in overruling the motion to strike out this judgment. It was regularly confessed by the attorney of the Company, and we find nothing in the record upon which such a motion can be sustained.

For errors, however, in the first and fifth exceptions, and for refusing to grant the sixth prayer of the appellants, the judgment must be reversed and new trial awarded.

> *Judgment reversed, and*
> *new trial awarded.*