# MARYLAND TUBE AND IRON WORKS *vs.* THE WEST END IMPROVEMENT CO. OF HAGERS-TOWN.

*Corporations—Bonus Tax—Act of 1890, c. 536—No Suit Maintainable by Corporation Until Payment Thereof—Question as to Valid Existence of Corporation May be Raised Collaterally.*

When a statute provides that no new corporation of a certain class shall possess any corporate powers until the payment of a designated bonus tax, then the question as to the validity of the incorporation because of non-payment of the tax may be raised collaterally by a person sued by the corporation. The legal existence of a corporation is always open to inquiry, although after a corporation is validly formed, a cause of forfeiture of the charter can only be taken advantage of by the State.

The Act of 1890, ch. 536, provided that every corporation thereafter incorporated should pay a bonus tax upon the amount of its capital stock in two instalments, the first upon the incorporation of the company and the other one year thereafter, "and no company as aforesaid shall have or exercise any corporate powers until the first instalment of said bonus has been paid." The Act of 1894, chap. 114, provided that all corporations chartered after the date of that Act should pay the whole bonus tax on the amount of the capital stock upon the incorporation, and that no company incorporated after the date of the Act should exercise any corporate powers until payment. This Act, while repealing inconsistent statutes, provided that no corporation incorporated prior to its passage should be released from the payment of any bonus tax due under the Act of 1890. The Act of 1894 also provided for a suit by the State to recover the bonus tax, and directed that if a judgment therefor remain unpaid for two years then the charter of the company should be forfeited. Plaintiff, a corporation, in 1892, before the payment of the bonus tax, made a contract for the purchase of certain land from the defendant, and in that year filed a bill for the specific performance of the contract. In the following year the above-mentioned bonus tax on the capital stock was paid. *Held,*

1st. That under the statutes the plaintiff had, when the contract was made and the bill filed, no legal existence as a corporation, and consequently is not entitled to maintain the suit.

2nd. That although plaintiff was liable to action by the State for the recovery of the tax, yet it had no legal existence until the same was paid.

3rd. That the payment of the tax by the plaintiff after the institution of this suit does not entitle it to prosecute the same.

Appeal from a decree of the Circuit Court for Washington County (STAKE, J.), dismissing the bill of complaint.

The cause was argued before McSHERRY, C. J., BRYAN, PAGE, BOYD and PEARCE, JJ. (Jan. 14, 1898).

*Hy. Kyd Douglas*, for the appellant.

*Norman B. Scott, Jr.*, (with whom were *Alexander Armstrong* and *Samuel B. Loose* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

The bill was filed in this case Sept. 19th, 1892, by the appellant against the appellee for the specific performance of an agreement to convey land, made in writing between the appellee on the one part, and O. C. Knipe and others on the other part, who subsequently assigned all their interest in said agreement to the appellant, with the consent as it alleges of the appellee.

The appellee answered the bill, admitting the execution of the agreement, but alleging various defences to the bill, among which is a denial of the existence of the appellant as duly incorporated under the laws of Maryland, and a denial of its right to maintain this suit, by reason of its failure to comply with the provisions of chapter 536 of the Acts of 1890. The general replication was filed and a mass of testimony was taken, and the bill was dismissed by the Court below (JUDGE STAKE) on the ground that the appellant had no legal existence as a corporation and was therefore not entitled to maintain the suit. Under the agreed statement of facts upon which this appeal was brought into this Court, the sole question for review is the right of the appellant to maintain this suit without having first paid the tax of one-eighth of one per cent. on the capital stock of the company in the manner provided by the Act of 1890, ch. 536. The statement of facts admits that both the appellant and the

appellee *are* incorporated in Washington County under the laws of Maryland, and that the agreement sought to be enforced is correctly set forth in the record.   It also admits that at the time the bill was filed the appellant had not paid, and had not been notified to pay, the first instalment of bonus as per ch. 536 of 1890, but that it did on the 18th of May, 1893, pay the same to the Comptroller of the State.   The record does not show the date when this statement of facts was made or filed, but the reference therein to the opinion of the Court dismissing the bill, which was filed June 1st, 1897, shows it was made and filed after that date.   This is only important to show that the admission of appellants' due incorporation, can only be regarded as an admission of incorporation at *that date*—June, 1897.

It will thus be seen the question before the Court is a narrow one.   In the answer, the agreed statement of facts, and in the opinion of the Court below, as well as in the argument in this Court, the case was regarded as depending wholly upon the construction of ch. 536 of 1890, and if this were the fact, there would be less difficulty in reaching a satisfactory conclusion.   But the Act of 1894, ch. 114, deals with the same precise subject-matter, and if it can be said it does not repeal the Act of 1890, it yet materially changes the law applicable to cases arising under the Act of 1890—and we are required to consider and construe the Act of 1894.   It will be seen that the titles of these Acts are in precisely the same words, except that the Act of 1890 is "An Act to add a (one) new section to Art. 81 of the Code  *  *  *  to be designated as section Eighty-eight A," while the Act of 1894 is " An Act to add six new sections to Art. 81 of the Code, to be designated as sections Eighty-eight F, G, H, I, J," and that the word " corporation " is used in the title of the latter Act where the word " company " is used in the title of the former.   The Act of 1894 specifically provides that no corporation incorporated prior to the date of the passage of that Act, shall in any manner, by that Act, be relieved or released from the pay-

ment of any bonus due under the Act of 1890, and this pro-
viso, taken in connection with the repealing clause in sec-
tion 2 of that Act, clearly indicates the legislative purpose
to repeal the *future* operation of the Act of 1890, while sav-
ing all remedies and results by reason of the non-payment
of any bonus by any corporation, incorporated prior to the
passage of that Act.   It should be noted here that ch. 244
of 1890 adds five new sections to Art. 81 of the Code, to
come in after section 88, and to be designated as sections
88 A, B, C, D and E.   These sections deal only with
taxes on the assessed value of the shares of capital stock of
corporations, and not with the bonus tax.   Then came ch.
536 of 1890, which added one new section to Art. 81, to
come in after section 88, and to be designated 88 A, so that
under these two Acts, there were two sections each desig-
nated 88 A.   It is thus made evident that the draftsman of
ch. 114 of 1894, with these two Acts of 1890 before him
and intending to avoid the existing confusion arising from
the designating of two sections as 88 A, designed to repeal
the Act of 1890, ch. 536, and to substitute section 88 F
of the Act of 1894 for section 88 A of the Act of ch. 536
of 1890, leaving sections 88 A, B, C, D and E of ch. 244 of
1890 to stand in their regular order of precedence.
*Montel* v. *Consolidated Coal Co.*, 39 Md. 171, 174.   The
appellant was incorporated prior to May 18th, 1893,
since it paid the first instalment of bonus tax on that
date, but it appears from an examination of the Act of 1894
that the proceeding prescribed therein for the recovery of
the bonus tax upon corporations, and the provisions setting
forth the result of non-payment, are applicable as well to
corporations created before, as after the passage of that Act,
and that if there is anything to be found in that Act not
contained in the Act of 1890, which would sustain the ap-
pellant's right to maintain this suit, it is entitled to the bene-
fit thereof.   Comparing ch. 244 of 1890 with ch. 114 of
1894, it is evident that the draftsman of the Act of 1894,
overlooking the true theory and design of the Act of 1890,

ch. 536, or deliberately intending to alter its true theory and design, substantially provided the same remedy and procedure for the recovery of the bonus tax, as was by ch. 244 of 1890, provided for the recovery of the tax upon the assessed value of capital stock, and it is now urged by the appellant, since the oral argument, that as the Act of 1894 subjects the corporation to suit *by the State* for the recovery of this bonus tax, it necessarily follows that the corporation has a legal existence *for all purposes* and therefore full capacity to sue.   But with this contention, however plausible and forcible the argument at first blush, we are not able, after full and careful consideration, to agree ; and we are of opinion that if the appellant would be held incapable of maintaining this suit under the Act of 1890, it must be so held under the Act of 1894.   To hold otherwise, and to hold as the appellant urges, that this Act recognizes a corporation which has not paid the bonus tax when due, as an existing, moving, active corporation for all purposes, would be to strike with absolute nullity the plain and imperative language of section Eighty-eight F, which declares that no such corporation shall *have or exercise* any corporate powers until such bonus has been paid.   It is settled law that charters or statutes conferring franchises on a corporation are to be construed in favor of the public rather than the corporation, and to gratify this rule where the charter, as here, is under a certificate, the general law is to be read into the certificate.   Every word, phrase or sentence doubtful or ambiguous, is to be interpreted in favor of the State. *Thompson* in his work on *Corporations,* sec. 5650, says: "The rule is simple.   That which the company may do by its charter, it may do.   Beyond that, its acts are illegal."

In *Roland Park Co.* v. *The State,* 80 Md. 448, the Act of 1890, ch. 536, and the Act of 1894, ch. 114, were considered on another point ; and it was said : "What we have to do is to discover the legislative intention, and to give it, when ascertained in accordance with established rules, full and complete effect   *   *   *   and this intent may be

gathered not merely from the language of the enactment, but also from the causes or necessity which prompted its passage. A result which may flow from one construction or another of a statute, is always a potent factor, and is sometimes in and of itself conclusive as to the correct solution of the question as to its meaning." One result which might follow the establishment of appellants' contention would be that corporations defaulting under this Act, might not only continue in the full exercise of the prohibited powers for two years after such default, but might before the expiration of that period, dispose of all their property and leave the State a barren judgment for this bonus. Such a result could not have been within the legislative contemplation, and ought not to be permitted if it can be avoided by any sound construction of the whole Act. It is a cardinal rule of construction that where one part of a statute is susceptible of two constructions, and the language of another part is clear and definite, and is consistent with one of such constructions and opposed to the other, that construction which will render all clauses of the statute harmonious, must be adopted. *Magruder* v. *Carroll*, 4 Md. 348–349; *Alexander* v. *Worthington*, 5 Md. 472.

Sections 88 F and H must be construed together, and by so doing section 88 F must be taken to prohibit generally the *having* or *exercising* of any corporate powers, before payment of the bonus—which would include generally suits by or against the corporation—and the office of section 88 H is merely an exception withdrawing from the general purview and operation of section 88 F the particular suit authorized for the recovery of the bonus tax by section 88 H. Every corporation is the mere creature of the State, and where neither its charter, nor any statute restricts the powers through which it maintains itself and responds to the discharge of its obligations, it may be conceded that the right to sue and the liability to respond to a suit, are correlative, but the State which creates the corporation is sovereign, and while *withholding* from the corpora-

tion, or *suspending* the right to sue before compliance with a revenue measure, as the price of the exercise *by it* of corporate powers, may clearly, if it see fit, subject such corporation to suit *by the State* for non-compliance with such condition precedent; and we think the Court below correctly and clearly stated the law when it said : " The effect of the law is to hold in *abeyance* the right and remedy of the suing corporation." And we are of opinion that this proposition is as clear under the provisions of ch. 114 of 1894, as it is under ch. 536 of 1890.

The appellant contended that the validity of its incorporation is conceded in the agreed statement of facts, but even if this would affect the result, we do not so understand the concession. It is expressly denied in the answer, and the agreed statement of facts was entered into *after payment of the bonus*, when its corporate power to sue was no longer held in abeyance, and when the right to sue was complete under the statute.

The next contention of the appellant is, that the question of corporate power cannot be raised collaterally, or in any way except by a direct proceeding by the State to forfeit the charter. There is, of course, no doubt, that *mere causes* of forfeiture cannot be taken advantage of collaterally, and that where the right to sue has once become vested in the corporation by compliance with all conditions precedent thereto, it can only be divested by forfeiture, in some legal mode, of the charter. But this case does not come within that rule. We have carefully examined all the cases cited by the appellant, and it will be found that all of them are cases merely of irregularity, and not of nullity ; cases in which the power to sue had become a vested power under the charter by a substantial compliance in good faith, with the requirements thereof, notwithstanding some irregularity in the proceedings thereunder.

*The Canal Co.* v. *The R. R. Co.*, 4 G. & J. 122, was the case of non-user of corporate powers ; and CHIEF JUSTICE BUCHANAN was careful to say : "Where there is an existing

corporation, capable of acting, cause of forfeiture can only be enforced by *scire facias* or *quo warranto,* issued at the instance of the government creating the corporation, and cannot be taken advantage of incidentally or in any other way by an individual, since the government, with which alone the contract arising out of the charter is made, may waive the breach of any condition of that contract, and cannot be made to enforce the forfeiture whether it will or not.''   But here, the State has by the Act of 1890, passed before the incorporation of the appellant, declared its will that until compliance with the fundamental condition, which was disregarded in this case, the appellant should have no other or greater corporate power, than it would have had after forfeiture enforced; and this legislative limitation of power is as effective for the purposes of this case as a decree of forfeiture made prior to the suit.

The *Regents* v. *Williams,* 9 G. & J. 426, was a question whether one corporation was merged in another, and the Court held that neither non-user nor misuser of corporate franchises would authorize granting the same franchises to others, before a forfeiture had been judicially declared, and CHIEF JUSTICE BUCHANAN was again careful to say : "*Scire facias* is the proper process when there is *a legally existing body capable of acting* but who have abused their power ; and *quo warranto,* which properly applies where there is a corporate body *de facto* only, but who take upon themselves to act, though from some defect in their constitution or organization, they cannot legally exercise their powers.''

So with the *Planters' Bank* v. *Bank of Alexandria,* 10 G. & J. 225, where it was contended that the charter of the Planters' Bank, under one of its sections, by reason of the suspension of specie payments, became *ipso facto* null and void without judicial inquiry upon the subject—but the Court held proceeding by *scire facias* necessary.

The following cases cited by appellant: *Taggart* v. *Western Md. R. R.,* 24 Md. 596; *Busey* v. *Hooper,* 35 Md. 30 ; *Hagerstown Turnpike Co.* v. *Creager,* 5 H. & J. 5 ;

*Hamilton* v. *Annapolis R. R.*, 1 Md. Ch. 197; *Keene &
Brady* v. *Van Reuth*, 48 Md. 194; *Musgrave* v. *Morrison*,
54 Md. 166, will all be found on examination to be governed
by the principles applied in *Canal Co.* v. *R. R. Co.*, 4 G. &. J.
4, and are all cases of *legally existing* bodies capable of act-
ing, and which had in good faith attempted to comply with all
legal requirements precedent thereto.    On the other hand,
the decisions in Maryland have always been that the *legal
existence* of a corporation is always open to inquiry. *Agnew*
v. *Bank of Gettysburg*, 2 H. & G. 493; *Lyons* v. *Orange
and Alexandria R. R.*, 32 Md. 18, in which the Court
speaks of " conditions which by the express provisions of
the statute are made conditions to be performed before and as
*a foundation of the exercise* of powers and privileges under
the charter."    Also *Hammond* v. *Strauss*, 53 Md. 12; *Smith*
v. *Silver Valley Mining Co.*, 64 Md. 94; *Bonaparte* v. *Lake
Roland Co.*, 75 Md. 347; *Lord* v. *Essex Building Associa-
tion*, 37 Md. 325, in which it is said (citing *Ang. & Am. on
Corp.*, sec. 83): "There is certainly no doubt that where a
corporation is created by statute, or under a general statute
as in this case, which requires certain acts to be done *before
it can be considered in esse*, there those acts must appear to
have been done in order to establish the corporate existence."

We find nothing in *Balto. & Potomac R. R.* v. *Baptist
Church*, 137 U. S. 568, in conflict with the law laid down
in the Maryland cases just cited; and in *Eaton* v. *Aspin-
wall*, 19 N. Y. 121, relied on by the appellant, the language
of the Act was not that ten per cent. of the capital stock
should be paid in " *before it should be a corporation*," but that
" where the certificate was filed, and ten per cent. of the
stock paid in, it should be a body politic."    But even if it
be conceded that the legal construction put by the appel-
lant upon the language used is the correct construction,
that case could not be accepted as controlling in the face of
our own decisions and when compared with other cases in
New York.

In *Williams* v. *Bank of Michigan*, 7 Wendell, 539,

CHANCELLOR WALWORTH said : " A contract made with a corporation by that name is neither an admission, nor any evidence that it is entitled to sue by that name as a corporation aggregate." And in *Welland Canal Co.* v. *Hathaway*, 8 Wendell, 480, JUDGE NELSON said : " When a corporation sues as such, if they have not the powers and privileges assumed in their dealings with one, it is their fault and not his. Whether they had these powers must have been known to them, and not to defendant, and no act of his could legally add to or detract from them. Why then should he be estopped from denying their corporate capacity, or they be excused from establishing it by legal evidence, when they are endeavoring to enforce their rights, in a manner and before a tribunal which can entertain their suit, only upon proof or assumption, that they are a corporate body duly constituted by competent authority." In *Field* v. *Cook*, 16 La. An. 153, it was held that the recognition of defendant as a company by the plaintiffs did not preclude them from showing that defendant had no legal existence as a corporation—and that to produce an estoppel, there should be at least an admission that the company was entitled to exercise corporate powers.

*Thompson* in his work on *Corporations*, sec. 6586—while admitting a regrettable conflict of judicial opinion upon this question—says that those decisions which hold that corporations can enjoy franchises while repudiating conditions upon which they are conferred unless the State is worried into a judicial proceeding to oust them " *are inexcusable.*" And he says in sec. 6587 "The sound doctrine is that where a statute creating a corporation declares that unless certain acts are performed within a prescribed time its corporate existence and powers shall cease, or its powers and franchises shall terminate, the statute executes itself without the necessity of forfeiture by legislative declaration or in a judicial proceeding. In such case its legal existence is a fact *in pais* to be ascertained *in any judicial proceeding, direct or collateral.*" It is laid down in 2 *Morawetz on Private Corpo-*

*rations*, sec. 778, that the doctrine of estoppel cannot be successfully invoked unless the corporation has a *de facto* existence, and JUDGE COOLEY in *Swartwout* v. *Mich. R. R.*, 25 Mich. 389, says: "Where there is a *de facto* corporation *with no want of legislative power to its due and legal existence*, in controversies between the *de facto* corporation and those who have entered into contract relations with it, where the questions suggested are only whether there has been strict compliance with the provisions of the law relating to incorporation—such questions should not be suffered to be raised."

In *Johnson* v. *Hines*, 61 Md. 130, this Court has said, speaking of the invalidity of a mortgagee's title derived from a trustee's deed made without ratification of the sale, but after ratification of an audit: "There is a marked and important distinction between nullities and irregularities—an irregularity may be waived—a nullity never can be waived."

In recognition of this fundamental principle, the exact question raised here was decided in the recent case of *Jones* v. *Aspen Hardware Co.*, 21 Colo. 263. This was an action of replevin by the company to recover a stock of goods. The statute in that case provided that every corporation incorporated under any general or special law, should pay the State a fee to be graded according to its capital stock, to be due and payable upon the filing of the certificate of incorporation, and that no such corporation should *have or exercise* any corporate powers until such fee should have been paid; and it was held that an association having failed to comply with the statute with respect to the payment of this fee, was neither a *de jure* nor a *de facto* corporation, and was not competent to maintain a suit as such. The Court said: "The language of the Act is plain and unambiguous. The doctrine of estoppel cannot be successfully invoked, unless the corporation has at least a *de facto* existence. A *de facto* corporation can never be recognized in violation of a positive law. There is a broad distinction between those acts made necessary by the stat-

ute *as a prerequisite to the exercise of corporate powers*, and those acts required of *individuals seeking incorporation* but not made prerequisites to the exercise of such powers."

These principles were clearly recognized and applied in *Boyce* v. *Trustees M. E. Church*, 46 Md. 373 and 374, where the Court said : " The statute law of the State expressly requiring certain prescribed acts to be done to constitute a corporation, to permit parties indirectly, or upon the principle of estoppel, virtually to create a corporation for any purpose, or to *have acts so construed*, would be in manifest opposition to the statute law, clearly against its policy, and justified upon no sound principle in the administration of justice."

Nor can we agree that the subsequent payment of this bonus is equivalent to its payment before the commencement of the suit. We think it clear that the right of action must be complete before the action is brought, and the subsequent occurrence of a material fact will not avail in maintaining it. *Dean* v. *Metropolitan R. R.*, 119 N. Y. 545 ; *Hollingsworth* v. *Flint*, 101 U. S. 596 ; *Baker* v. *Tillman*, 11 S. E. Rep. 535.

If the plaintiff is not himself incapacitated to sue and yet cannot maintain the particular suit because the right of action did not accrue until after commencement of the suit, a *fortiori* should it be precluded from maintaining the suit, where the inability is not a special one going to the particular suit, but a general inability going to the maintenance of any suit at that particular time. We find nothing in the authorities relied on by the appellant to overthrow the doctrine upon which this decision is placed, and we must affirm the decree appealed from.

*Decree affirmed.*