CROSAS *v.* CROSAS ET AL.

APPEAL from the District Court of Ponce.

No. 24.—Decided December 18, 1908.

CONTRACT OF SETTLEMENT—ESSENTIAL ELEMENTS.—Where it is not shown that a contract was entered into for the purpose of avoiding litigation, or of terminating a suit already commenced, and it is not shown what concession each of the contracting parties made for the purpose of avoiding litigation, the agreement cannot be regarded as a settlement.

The facts are stated in the opinion.
*Mr. José Tous Soto* for appellant.
*Mr. José G. Torres* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

The following complaint was filed in the District Court of Ponce:

"The plaintiff, through her attorneys, Ramón Dapena and José Tous Soto, appears and alleges before this honorable court: 1. That Juan Crosas y Dalmau, the uncle of the plaintiff, died in the city of Gerona, Spain, on July 25, 1896, leaving an open will executed on July 25, 1896, before Notary Joaquín Ametller, in the town of Santa Cristina de Aro, of said city or province, by which will be devised the usufruct of all his property to his servant, Beatriz Malara y Pascual, and constituted as his universal heir his brother, Francisco Crosas Dalmau (the father of the plaintiff), and substituted as heirs of the latter his children, prohibiting the sale, mortgage or incumbrance of the estate, which was to pass intact to the said children, and in the event that the said Francisco Crosas should die without issue, he constituted as his heir his other brother, Felix Crosas Dalmau; 2. That at the time of the death of the testator, Juan Crosas Dalmau, his brother and heir in the first place, Francisco Crosas, was living, and had as his only descendants a daughter, the plaintiff, who was then a minor, having been born on May 31, 1885; 3. That under the pretext that the sale of the property left by Juan Crosas would be advantageous and necessary to the interests of said minor, all of the property being real property situated in Spain, Francisco Crosas obtained authority from the Court of First Instance of La Bisbal, in the province of Gerona, Spain, to sell such hereditary property, which sale was made against the express will of the testator and to the prejudice of the interests of the minor, who was thus deprived of the right of entering upon the full enjoyment and ownership of such property upon the death of her father; 4. That the proceeds of the sale of such property amounted to the sum of 16,000 Spanish *pesos,* and were paid in full by Felix Crosas Dalmau, who received it in Spain in trust from the attorneys in fact of Francisco Crosas Dalmau, for the purpose of effecting the sale of the above-mentioned estate, with the charge of delivering said sum to the said Francisco Crosas Dalmau, the father of the plaintiff; 5. That of said sum of 16,000 Spanish *pesos,* equivalent to $10,482, Felix Crosas Dalmau appropriated the sum of $5,432, knowing that the ownership thereof was vested in his niece, the plaintiff, at that time a minor, alleging that Francisco Crosas, the father of the plaintiff, owed him his paternal legal portion, and that he had incurred alleged expenses for the sale of the estate and transfer of the price thereof to this Island, and the said Francisco Crosas, in his own name and on behalf of his daughter, the plaintiff, at that time a minor, on January 28, 1901, agreed to accept only $5,000 as the inheritance from his brother, Juan Crosas Dalmau, waiving in his own name and on behalf of his daughter, the

plaintiff, the right to receive the balance to make up the sum of $10,482, and gave a receipt in his own name and in that of the plaintiff, a minor at that time, to Felix Crosas, for the latter sum in full, without the proper judicial authority having been secured for this purpose; 6. That Felix Crosas Dalmau died and was succeeded by his wife, Francisca Castaing, as his only and universal heir, who accepted and entered into possession of the estate.

"In view of the above, we pray the honorable court to set aside the contract referred to in the fifth statement of fact of this complaint, and to adjudge the defendants jointly to indemnify the plaintiff in the sum of $5,000 and legal interest thereon from January 28, 1901, and to pay the costs. Ponce, P. R., October 3, 1907. José Tous Soto, Ramón Dapena, Attorneys for Plaintiff.

"I, Felicita Crosas de Quiñones, solemnly swear that I am the plaintiff in this case; that I have read the foregoing complaint; that the facts stated in the same are true. Ponce, P. R., October 15, 1907. Felicita Crosas. Signed and sworn to before me, by Felicita Crosas de Quiñones, with whom I am personally acquainted. Ponce, P. R., October 15, 1907. Augusto Pasarell, Notary Public."

The defendant, Francisco Crosas Dalmau, did not make answer to the complaint, but it was answered by Francisca Castaing, setting forth in her answer the antecedents and affirming that this same matter had been decided by the District Court of the United States for Porto Rico, specifically denying the fifth statement of fact, which is the principal one on this litigation, and making in its place the following allegation:

"That after Felix Crosas y Dalmau received the proceeds of the sale of that property in Spain he proceeded to comply with the instructions given him by the principal heir and legal representative of the plaintiff, Felicita Crosas y Baez, and to this end paid the taxes and other debts and charges to which the said property was subject; he likewise paid the costs of the testamentary proceedings and other expenses acknowledged and admitted by said principal heir, Francisco Crosas, and as the legal representative of the plaintiff. Thereafter, Felix Crosas y Dalmau rendered clear and supported accounts to the person to whom he should do so—that is to say, Francisco Crosas—as the principal heir and the legal representative of the substitute heir. In these accounts Felix Crosas showed to the full satisfaction of

Francisco Crosas, the father of the plaintiff, that from the proceeds of the sale of the hereditary property there remained $5,000, which sum Felix Crosas delivered to Francisco Crosas, and the latter received it and executed in his own right and as the legal representative of his said daughter, the plaintiff, Felicita Crosas, in favor of Felix Crosas, an acquittance and receipt in due form, before Rafael León, a notary of this city acting in the place of Notary Matienzo, by instrument dated January 28, 1901, at the execution of which the plaintiff, Felicita Crosas, was present.

"6. She acknowledged as true this statement of fact of the complaint. Therefore, the defendant prays the court that in due time and in view of the allegations she has made, judgment be rendered holding: First, that the subject matter of the complaint has become *res judicata*, having been heretofore decided by final judgment of a court of competent jurisdiction; and second, that, otherwise, judgment be rendered in favor of the defendant dismissing the complaint with regard to her, and taxing the costs against the plaintiff. Ponce, January 7, 1908. Gustavo Rodríguez, Attorney for the Defendant.

"On January 7, 1908, Francisca Castaing, the widow of Crosas, appeared before me and said that she has read the foregoing document and swears that the facts therein alleged are true; some of her own knowledge and others from hearsay. She signed and I certify. Francisca Castaing, widow of Crosas. Carlos J. Chardon, Notary Public. Notice was served this 8th day of January, 1908. José Tous Soto."

On March 4, 1908, the judge of the District Court of Ponce, rendered the following judgment:

"The trial of this case having been had according to the date set on the calendar, at which trial Felicita Crosas y Baez appeared through her attorneys, Ramón Dapena and José Tous Soto, and the defendants, Francisco Crosas Dalmau and Felicita Castaing, as the only heirs of Felix Crosas, through their attorney, Gustavo Rodríguez, and the court, after having heard the complaint and answer the evidence, and the arguments of the parties, holds that with reference to the defendant, Felicita Castaing, the law and the facts are against the plaintiff because, although the receipt in full executed in 1901 by Francisco in favor of Felix Crosas in no way affects the rights of the plaintiff, the latter has not proved nor alleged that in the event of the death of Francisco Crosas she would not receive in full the inheritance of 16,000 Spanish *pesos* with the proper deductions.

Therefore, the complaint is dismissed with regard to the indemnity sought to be recovered, with the costs against the plaintiff, reserving to her the right to investigate and prove the payments made to her prejudice by Francisco Crosas and Felix Crosas with the knowledge on the part of the latter that the former lacked property sufficient to answer to the plaintiff for such payments, if it should appear that Francisco Crosas does not have sufficient means to secure the rights of the plaintiff in such inheritance.''

The plaintiff took an appeal from this judgment, and the proceedings are now pending here, with a statement of facts duly approved and signed by the trial judge.

This statement does not show that the plaintiff presented any evidence whatsoever.

The defendant who answered the complaint, did present documentary evidence consisting of the deed referred to in the fifth statement of fact of the complaint, called a compromise, and the documents which in the opinion of the defendant, Francisca Castaing, prove that this same matter had been before the District Court of the United States for Porto Rico, and had been decided in due time in favor of said defendant.

In this case we cannot understand why the question at issue has been removed from its proper place, in order to enter upon disquisitions which are absolutely foreign to the clear, precise and definite terms of the complaint and answer, which is what we should consider and study in order that the judgment may conform in every respect to what is sought and consequently to what has been the subject of legal controversy.

At no time has it been sought to recover herein the estate of the deceased Juan Crosas y Dalmau, nor is anything alleged against his will. Let us then put aside that estate and that will, and let us come to the prayer of the complaint in which the annulment of the contract referred to in the fifth statement of fact thereof is sought in addition to indemnity in the sum of $5,000 and legal interest on said sum from January

26, 1901, according to the plaintiff, because said instrument contains a contract of compromise, and the plaintiff having been a minor at that time, the contract could not have been entered into without previous judicial authority; subsequently, in the brief of the appellant, taking into consideration the value of the property, which exceeds 2,000 *pesetas,* she alleges the violation of the second paragraph of article 1910 of the Civil Code of 1889, and of subdivision two, three and four of the former Law of Civil Procedure, all in support of the allegation that the compromise was entered into without the judicial authority in such cases required.

This is the real and only question at issue and it is that which we must decide in this litigation.

It is alleged, we say, that the instrument of January 28, 1901, embodies a compromise, and this is not the case.

Article 1809 of the Civil Code of 1889, reads as follows:

"A compromise is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted."

Upon reading the instrument of January 28, 1901, it does not appear that any differences between Felix Crosas Dalmau, Francisco Crosas and his daughter, now the plaintiff, had been compromised in any way.

There is not the slightest indication in the record, nor has the plaintiff proved anything and much less that said instrument and the contract entered into thereby were based on the idea of avoiding litigation or putting an end to an action already instituted.

Nor does said instrument show what right each of the parties thereto ceded on his part for the purpose of avoiding litigation, because only under such conditions can a compromise be entered into, which as a *stricti juris* contract, does not admit of any construction but a genuine and literal one.

If, therefore, the circumstances which characterize a con-

tract of compromise were not present, it must be agreed that in this case judicial authority was unnecessary on the ground that a minor was involved, on which fact the plaintiff and appellant, Felicita Crosas y Baez lays great stress.

However this may be, it is a fact acknowledged in the complaint, that Francisco Crosas obtained from the courts of Spain authority to sell the real property which composed the estate of the deceased, Juan Crosas Dalmau, and from this fact, which was accepted in Spain by the plaintiff, is no doubt derived the instrument of January 28, 1901, which is nothing more than a rendition of accounts of that very sale, and the execution of a receipt in full for the resulting balance which the father of the plaintiff, Francisco Crosas, received in cash.

The instrument of January 28, 1901, which as has been said before, is a logical and necessary consequence of the sale of the property which took place in Spain, is this and this only, and contains nothing else. Read this instrument carefully, and it will be seen that it does not contain the slightest resemblance to a contract of compromise.

If, therefore, there is no compromise, the annulment thereof does not lie and consequently much less the indemnity which is also prayed for.

The defendant, Francisco Castaing also pleaded the exception of *res judicata.*

But the trial judge did not consider this allegation because he did not decide anything thereon, and as the defendant did not appeal from said judgment, it is not necessary that we consider this question now, when the complaint falls on other grounds.

In view of the reasons stated, the judgment rendered on March 4, 1908, by the Judge of the District Court of Ponce should be affirmed only in so far as it dismisses the complaint; with the costs of the appeal against the plaintiff and appellant.

*So decided.*

Justices Hernández and Wolf concurred.

Mr. Justice MacLeary dissented.

Mr. Chief Justice Quiñones did not take part in the decision of this case.

### DISSENTING OPINION OF MR. JUSTICE MACLEARY.

According to my view of this case my colleagues have misunderstood the purport of the pleadings and have narrowed down the purpose of the suit beyond what is warranted by a fair consideration of the whole record. As I understand the matter this is a suit brought in the District Court of Ponce, against the defendants for a conspiracy to defraud the plaintiff out of an inheritance, and alleging that the defendants had come into possession of moneys belonging to the plaintiff and never paid over the same to her or accounted to her therefor, and incidentally to declare null and abrogate a certain contract made by defendants, to the plaintiff's prejudice, which is therein set forth, and to compel the defendants to pay $5,000 damages to the plaintiff for such wrongful acts and injuries, and legal interest on the same from the 28th of January, 1901, and all costs of the proceeding. To this complaint defendant, Francisca Castaing, filed a demurrer because, as alleged, the complaint did not set forth sufficient facts to constitute a cause of action against the said defendant making the demurrer. The other defendant, Francisco Crosas, made no demurrer to the complaint; and can claim no injury from the adverse ruling of the court.

From the opinion given and the judgment rendered by a majority of the court I am constrained to dissent for the reasons which will be stated as briefly as the importance of the case will permit.

On the demurrer filed by the defendant, Casting, the district court made the following ruling:

"The plaintiff herein sets forth certain acts committed by the defendant, Francisco Crosas, and by his brother, Felix Crosas,

whereby the plaintiff was deprived of certain moneys to which she was entitled—in other words, alleging that moneys belonging to her came into the hands of the two gentlemen above-mentioned and have never been paid to her in full. Don Felix· Crosas is dead and his widow is made a defendant herein in the capacity of his sole heiress. It is alleged in the complaint that she has accepted the inheritance. On the facts set forth the plaintiff would undoubtedly have a good cause of action against Don Felix Crosas if he was still alive, and it is the opinion of the court that she has a good cause of action against his estate. The demurrer of the defendant, Doña Francisca Castaing, is overruled with costs.''

Thereupon after the overruling of her demurrer the defendant, Francisca Castaing, filed an answer pleading that the same cause of action had been decided in the District Court of the United States for Porto Rico in favor of her deceased husband, Felix Crosas Dalmau; and further pleaded that her deceased husband, the said Felix Crosas Dalmau, had fully settled the claims sued on, before the institution of this suit, with Francisco Crosas, the father of the plaintiff, by a public document duly executed before a notary.

The defendant in the second place pleaded, admitting certain facts set forth in the complaint, naming them; but denying the fifth paragraph of the complaint, and she set forth the facts as she claimed them to be, further praying the court for judgment in her favor declaring that the case was *"res judicata,"* and rendering judgment in her favor discharging her from the said demands, and adjudging costs against the plaintiff.

In March last the District Court of Ponce rendered the following judgment:

''In the city of Ponce, P. R., on this the 9th day of March, 1908, this case came on to be heard at the regular sitting, appearing the plaintiff, Doña Felicita Crosas y Baez, by her counsel, Don Ramón Dapena and Don José Tous Soto, and the defendants, Don Francisco Crosas Dalmau and Doña Francisca Castaing, as sole heiress of Don Felix Crosas, by their counsel, Don Gustavo· Rodríguez.· The court having heard the complaint and the answer thereto, the evidence and

the arguments of the parties, is of the opinion that in regard to the defendant, Doña Francisca Castaing, the law and the facts are against the plaintiff, because although the acquittance given in 1901 by Don Francisco Crosas to Don Felix Crosas does not affect in any manner the rights of the plaintiff, the latter has not shown nor alleged that in the case of the death of Don Francisco Crosas she would not receive the whole inheritance of 16,000 Spanish *pesos* with the corresponding discount. Therefore the complaint is dismissed in regard to the damages requested, with costs against the plaintiff, reserving to her the right to investigate and prove the payments made to her prejudice by Don Francisco Crosas and Don Felix Crosas, it being known to the latter that the former ·did not have sufficient property to answer the plaintiff for said payments in case Don Francisco Crosas did not have means to secure the rights of the plaintiff to said inheritance."·

Thereupon the plaintiff duly prosecuted her appeal from the said judgment to this court.

Upon the record as presented, the following questions clearly arise and should be decided:

First. Does the plaintiff have a cause of action in this case, against either of the defendants, from the facts presented, prior to the death of her father, the defendant, Francisco Crosas?

Second. Is the matter complained of *"res judicata,"* by having been decided in the United States District Court for Porto Rico?

Third. In view of the pretended settlement which is alleged to have occurred between Felix Crosas and Francisco Crosas, involving the claim sued on, or the damages arising therefrom if any, is the plaintiff entitled to recover anything from the defendants, or either of them?

Let us examine these questions *seriatim.*

The decision of the trial court is virtually to the effect that the suit could not be maintained by plaintiff until after the death of her father; because until that time her right is inchoate; unless she can show that he is insolvent and that his estate will not be able to pay her the amount of money

to which she will be entitled; and in order to make the widow, Mrs. Crosas, liable, plaintiff must also show that Felix Crosas, the deceased husband of the latter defendant, knew that his brother Francisco, also one of the defendants, was insolvent and would not be able to pay his daughter, the plaintiff, the legacy when she became entitled to it. We should then decide whether or not this suit was prematurely instituted. As a general proposition it is clearly correct to say that a "right of action must be complete before the action is brought, and the subsequent occurrence of a material fact will not avail in maintaining it." (See the case of *Maryland Tube & I. Works* v. *West End Improv. Co.,* 87 Md., 207; 39 Atl., 620; 39 L. R. A., 810 and 813.)

But we must remember that this legacy was originally a devise of lands in Spain for life to Francisco Crosas, with remainder over to the plaintiff, and if she should die without issue with remainder over to Felix Crosas, the deceased husband of the other defendant Francisca Castaing. The land was sold under some sort of judicial proceedings in Spain, the legality of which is not questioned, and which must here be presumed to be correct and legal. The proceeds of this sale, on the order of Francisco Crosas, were delivered to his brother, Felix Crosas, and by him brought to Ponce, P. R., and an accounting was said to have been made to the defendant, Francisco Crosas, who purported to represent not only himself, but his minor daughter, the plaintiff, who has since attained her majority and married. He seems not to have had any authority from any court to take any such action, and his authority to bind his minor child by any such settlement may well be called in question. It, however, appears that Felix Crosas, by the terms of this contract of settlement, retained more than half the money, derived from the sale of the lands inherited, in the accounting which the two brothers made between them. This fact alone is an indication of a fraud if not of a conspiracy. Then the proceeds of the sale of the lands devised should be treated, in applying the rules of juris-

prudence to this case, not as personalty but as realty, and the right of the plaintiff to demand an accounting must be considered to remain the same as if the lands had not been sold.

It has been held in the State of New York by the Court of Appeals, that:

"An action to establish an agreement by brothers and sisters to whom land has descended in common, to hold the same as joint tenants, and that it shall pass by descent or devise to the survivor and from the latter to a child of one of the brothers, and to set aside conveyances of the land by the survivor, is not prematurely brought by such child, on the ground that the survivor is not yet dead and that the child is not entitled to possession, since if the agreement is valid he has a vested remainder in the property and the right to protect the estate, so that he may receive the same when it should come to him by the terms of the agreement." (This quotation is made from the head notes in *Murphy* v. *Whitney*, 140 N. Y., 541; 35 N. E., 930; 24 L. R. A., 123.)

It is true, as said in a note of *German* v. *German*, in 67 American Decisions on pages 453 and 454, that:

"Under the old chancery doctrine the remainderman, after a life estate in personalty, could call for security from the tenant for life that the estate would be forthcoming at his death, for equity regarded his tenancy merely as a trust for the remainderman; but this practice has now been generally overruled, though it is held in some cases that security may still be required where there is real danger that the property may be wasted, secreted, or removed: *Anonymous*, 2 Freeman, 206; *Bracken* v. *Bentley*, 1 Rep. Ch., 59; *Foley* v. *Burnell*, 1 Bro. C. C., 279; *Sutton* v. *Craddock*, 1 Ired. Eq., 134; *Mortimer* v. *Moffatt*, 4 Hen. & M., 503; *Gardner* v. *Harden*, 2 McCord Ch., 32; *Smith* v. *Daniel*, Id., 143; *Merril* v. *Johnson*, 1 Yerg., 71; S. C., 1 Hill Ch., 44; *Henderson* v. *Vaulx*, 10 Yerg., 30; *Hudson* v. *Wadsworth*, 8 Conn., 348; *Langworthy* v. *Chadwick*, 13 Id., 42; *Homer* v. *Shelton*, 2 Met., 194; *De Peyster* v. *Clendenning*, 8 Paige, 295, declares the New York rule, which is, in case of a specific bequest for the legatee, to give to the personal representative of the testator an inventory of the articles bequeathed, stating his possession of them and that when his interest expires they are to be delivered up."

This applies to specific bequests of personal property or of money; and so it may be claimed that it is not entirely applicable to the case before the court at this time. And the same learned commentator, Mr. Freeman, says in a lengthy note to the case of *Allen* v. *De Groodt,* a Missouri case, in 14 Am. St. Rep., on p. 628, that:

"In determining the rights and remedies of a reversioner or remainderman, the best guide is to consider the nature of his estate and that of the tenant for life, or of the other particular estate, which must terminate before the reversioner or remainderman can come rightfully into the possession of the property. As a general rule the tenant and the reversioner or remainderman are not at the same time entitled to the same right or remedy. Almost universally a tenant of the particular estate has the right to its possession, and the possession to which he is so entitled is not a formal one merely, but carries with it the right to the beneficial enjoyment of the property. If it is clear from the instrument creating the two estates that the owner of the particular estate is entitled to be in the possession and use thereof, it may be that such possession and use will result in the entire extinction of the subject matter of the estate, and thus wholly defeat the rights of the reversioner or remainderman. If the subject matter is personal property, and the tenant is entitled to its use, he has a right to use and enjoy it according to its nature, though this use may result in its total consumption. (*Majors* v. *Herndon,* 78 Ky., 128; *Woods* v. *Sullivan,* 1 Swan, 507; *German* v. *German,* 27 Pa. St., 116; 67 Am. Dec., 451.) On the other hand, if the property is not such as is consumable in its ordinary use, the only right which the reversioner or remainderman has is the right to have the property forthcoming at the termination of the particular estate."

The same remarks will apply to this as to the former note in 67 Am. Dec., 453, to which reference is made in the last quotation. We may be said to be now virtually dealing with real estate, for so may the money derived from the sale of lands in Spain be by us considered.

In the examination of most of the authorities accessible to us we are impressed with the conclusion that we cannot do better in this case than to follow the decisions of the New York courts, which seem to be well grounded both in reason and

authority. In the case of *Murphy* v. *Whitney,* 24 L. R. A., p. 126, the Court of Appeals of New York, speaking through Mr. Justice Earl, uses the following language:

"It is no defense to this action that the time has not yet come when the plaintiff could come into possession of the property under the terms of the agreement. The time had come when, assuming the validity of the agreement, he had a vested remainder in the property, and the right that the defendant, Mary, had to the real estate or its proceeds was a life estate, the right to the income thereof during her life. As a remainderman he had the right to protect the estate, so that he might receive the same when it ought to come to him by the terms of the agreement. If the defendant, Mary, still had the land and there was danger, in consequence of her age and feeble mind and the undue influence, artifice and fraud of the other defendants, that she might convey it to a *bona fide* purchaser ignorant of the agreements, he could come into a court of equity and restrain the conveyance thereof; and, so far as the land has been converted into money and the defendants, Whitney and Moore, are appropriating the same to their own use, and there is danger that it may be dissipated and diverted from the plaintiff so that he may not be able to get it at the death of Mary, it would be a reproach to equity if its jurisdiction were not sufficient to give him some relief, so that the proceeds of the real estate may be preserved, not only to Mary during her life, but for his benefit at her death."

Then it seems to me that under all the facts of this case, as shown in the record, and in accordance with the authorities which we have examined and cited, we should hold that the plaintiff has a right to institute her suit now, without waiting for the death of her father to occur, in order to protect her right, so that when the time arrives for her to receive and enjoy the bounty of the testator there will be something substantial to take possession of and to use for her own benefit, as intended by the testator, who remembered her in his will.

The next question arising in the decision of this case is a consideration of the plea made by the defendant, Francisca Castaing, of "*res judicata.*" The former judgment pleaded was rendered in the District Court of the United States in

June, 1905. It was in a suit in which the present plaintiff, Mrs. Felícita Crosas de Baez, and Mr. Francisco Crosas, one of the present defendants, were the plaintiffs, and Mr. Felix Crosas, the deceased husband of one of the present defendants, Mrs. Francisca Castaing, was the sole defendant. That is to say, that the parties in the two suits are the same with these changes, that Mr. Francisco Crosas who was formerly a plaintiff is now made a defendant, and Mr. Felix Crosas, who was formerly a defendant, has since died and his widow and sole heir is made a defendant in his stead.

. The judgment relied on as a former adjudication of the same questions involved in this case reads in words literally as follows:

"In the United States District Court for Porto Rico. In Chancery. *Felícita Crosas y Baez et al.* v. *Felix Crosas Dalmau.* Bill for accounting. This cause having been heard and submitted to the court upon the sufficiency of the plea filed by the defendant to the bill of complaint and the court having heard the argument of counsel and having duly considered the questions involved, it is hereby ordered and considered that said plea constitutes a good and sufficient defense to all matters alleged in said bill. And it further appearing to the court that in said bill of complaint no reference is made to the said notarial settlement set up in the plea aforesaid as a defense, the existence of which is not now denied by the counsel for the complainants, it is considered by the court that the complainants have not come into court with clean hands but have attempted to deceive the court as to having made a settlement of the claims put forth by them in their said bill by concealing the same, it is hereby ordered that their said bill of complaint be dismissed at their cost. Dated and ordered in open court at San Juan this 19th day of June, A. D. 1905. (Signed) Chas. F. McKenna, Judge."

It has been held by the Supreme Court of Texas that:

"When the defendant pleaded a former recovery, and the record produced showed that the plaintiff had been nonsuited, the judgment was no bar to the action." *Pillow* v. *Eliot*, 25 Tex. Sup., 323; citing as authorities the former cases of *Hassell* v. *Nutt*, 14 Tex., 265, and *Foster* v. *Wells*, 4 Tex., 101, decided by the same court.)

The Supreme Court of Illinois holds to the same effect in a later case, saying:

"The dismissal of a bill for want of equity, on demurrer, when the bill shows that the remedy is at law, is equivalent to a dismissal for want of jurisdiction, and the decree will present no bar to an action at law to enforce the same right sought to be enforced by the bill. There can be no equity in a bill when there is a want of jurisdiction." (*Richards* v. *L. S. & M. S. Ry. Co.*, 124 Ill., 517.)

The Supreme Court of California takes the same ground in regard to this question, holding that:

"There can be no doubt that the first judgment set up in the answer was a bar to this suit. A judgment upon demurrer is not always a bar to a subsequent action, but only when it determines the whole merits of the case.

"Here the averment of the answer shows that the demurrer went to the validity of the contract which gave rise to the claim, and this averment is found to be true as alleged, by the judge at *nisi prius*, upon inspecting the record of that case." (*Robinson* v. *Howard*, 5 Cal., 430.)

And the Supreme Court of Massachusetts briefly says in one case which has been brought to our notice:

"In *assumpsit* a nonsuit upon the merits is not a bar to a future action." (*Bridge et al.* v. *Summer*, 18 Mass., 370.)

Finally the question is set at rest by the Supreme Court of the United States in the weighty words following:

"It requires no argument to show that judgments like these are no bar to the present suit. In order that a judgment may constitute a bar to another suit, it must be rendered in a proceeding between the same parties, or their privies, and the point of controversy must be the same in both cases, and must be determined on its merits. If the first suit was dismissed for defect of pleading, or parties or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit." (*Hughes* v. *United States*, 71 U. S., 237.)

The judgment of the Federal Court not having been rendered on its merits, but being equivalent to a mere dismissal without prejudice, cannot be considered as a bar to this action although virtually between the same parties, though arrayed on different sides of the case, in the second action from what they were in the case in the Federal Court.

In order for a judgment to be a bar to a second action it must be shown from the record that the trial of the case was had on its merits and that it did not go off on a technical defect. (*Richards* v. *L. S. & M. S. Ry .Co.,* 124 Ill., 517; *Hughes* v. *United States,* 71 U. S., 237; *Gilman* v. *Rins,* 35 U. S., 297; *Foster* v. *Wells,* 4 Tex., 101; *Hessall* v. *Nutt,* 14 Tex., 265; *Pillow* v. *Eliot,* 25 Tex. Sup., 323; *Bridge* v. *Summer,* 18 Mass., 370; *Robinson* v. *Howard,* 5 Cal., 430; *Freeman on Judgts.,* sec. 261.)

The third and last question which seems to me necessary to be discussed involves the ruling by the court made on the demurrer to the plaintiff's complaint, which was at first overruled, but in the final judgment virtually sustained. Taking the view which I do of this case, that the action was not prematurely brought and that the plea of *"res judicata"* was not sufficient, it follows that there should have been a trial on the merits. If the complaint was defective for some matter of form, or if it failed to sufficiently allege a conspiracy between the Crosas brothers to defraud plaintiff out of her inheritance, she should have been permitted to amend it and set out all that was deemed necessary and susceptible of proof. The case after a full trial on the facts can be much better disposed of in accordance with the dictates of justice. The judgment should therefore have been reversed and the case remanded for a new trial.