JAMES BOYCE vs. THE TRUSTEES OF THE TOWSON-
TOWN STATION OF THE M. E. CHURCH.

*Corporations de jure and de facto—Plea of nul tiel Corpora-
tion—Distinction in the Act of 1868, ch. 471, between Reli-
gious Societies and Religious Corporations—Corporations
cannot be created by Estoppel.*

The Act of 1868, ch. 471, in its 14th section provides among other things for
the incorporation of religious societies, and by secs. 156, 162, 163 and 164,
for religious corporations. HELD:

That these last provisions are more especially applicable to the organization of
a church, religious society, or congregation of whatever denomination, and
it is to be presumed were intended for such purpose.

Amongst other requisites to constitute a religious corporation, church, reli-
gious society or congregation under these last sections, it is provided that
the agreement for that purpose should be acknowledged by the trustees or
a majority of them, before two justices of the peace of the county or city in
which the church, congregation, or society, or the greatest number of the
members shall reside, or before a Judge of the Circuit Court, or of the
Supreme Bench of Baltimore City, and certified by the said Justices or Judge
according to the directions of section 163. HELD:

That no authority having been given to the Judge by these provisions to
determine that the provisions of law have been complied with, his certificate
is no sufficient evidence of that fact.

In a suit against a religious corporation, where the certificate of incorporation
was defective and insufficient to show that the defendant was a corporation.
HELD:

1st. That the fact that it held itself out as a corporation, and treated with the
plaintiff as such, did not estop it from denying its liability as a corporation.

2nd. That the statute law of the State having expressly required certain pre-
scribed acts to be done to constitute a corporation, the omission of those
requisites cannot be supplied by the application of the doctrine of estoppel.

APPEAL from the Court of Common Pleas.

This was an action of assumpsit brought by the appellant against the appellee.   The defendant appeared by counsel, and filed the three following pleas.

1. That the defendants are not and never were a body corporate, as alleged.

2. And for a second plea, the defendants say, that the defendants never were indebted as alleged.

3. And for a third plea, the defendants say, they did not promise as alleged.

Upon these pleas the plaintiff joined issue.

*First Exception.*—The plaintiff, James Boyce, sworn on his own behalf, was the first witness called on either side, and immediately after being sworn was about to state what took place at an interview between himself and Oliver P. Merryman and John T. Ensor, in the year 1871 or 1872, the plaintiff's counsel at the same time offering to show the precise mode in which the assistance and aid of said plaintiff were sought, and the acts which were done by the plaintiff in consequence thereof, and stating their intention to follow up this proof by establishing that the defendant is a body corporate, and that the said acts were accepted and acquiesced in by said defendant, and to rely upon the conduct and wrong-dealing of the defendant with the plaintiff and others, as estopping it from denying its incorporation.

The plaintiff then, in support of the first issue, and in order to show acts of user of the corporate name and franchise of the defendant, and for other purpose under the other issue, offered to read in evidence a mortgage from the Trustees of Townsontown Station of the Methodist Episcopal Church to Francis A. Crook and Philip Hiss, trustees.

And also a deed from John T. Ensor, trustee, to said trustees for the property, upon which has been erected the church building mentioned in the bill of particulars filed.

in this cause, stating that the plaintiff would follow up this proof by the execution of another mortgage by the said trustees under said name, and proof of other acts of user of said corporate name and franchise; to the introduction of which evidence the defendant objected and the Court (GAREY, J.,) sustained said objection, and refused to allow said evidence to be produced before the jury. The plaintiff excepted.

*Second Exception.*—The plaintiff then proved by himself, testifying in his own behalf, that he was called upon in the year 1871, by John T. Ensor and O. P. Merryman, who represented to him that the building committee was unable to go any further in the construction of the Methodist Church, at Townsontown, and that they wanted him to go into the building committee, he declined; Mr. Merryman then said that he would not go into the committee, unless plaintiff did so; the plaintiff then said that Merryman would be a valuable member, and he would consider the proposition further. A meeting was then held between the plaintiff, Ensor, Merryman, H. L. Bowen and others, at the counting-room of the plaintiff in Baltimore City, when various propositions occurred. Finally, he agreed to go upon the committee with Ensor, Merryman, Bowen and another. They then determined to borrow money from the Preachers' Aid Society, $10,000. The application was made and declined, as it would not loan on the church, but the society offered to loan on the plaintiff's own note for the amount. The plaintiff finally gave his own note, and obtained the money, taking from Ensor, Bowen, Merryman and Emory, their obligations for $2,000 each, secured by mortgage of their respective properties. For the purpose of raising more money, a mortgage was executed on the church to secure certain bonds.

The plaintiff then proposed to read in evidence said mortgage, and one of the bonds; offering to follow up the testimony so offered by proof, that a part of the money for

which this suit was brought, was paid by plaintiff, he receiving at the time against it some of said bonds. To which evidence the defendant objected, and the Court sustained the objection. The plaintiff excepted.

*Third Exception.*—The plaintiff then offered to read to the jury a paper writing, as the certificate of incorporation of the defendant, as follows:

### Incorporation of Trustees of Towsontown Station, Methodist Episcopal Church:

*Whereas,* by an Act of the General Assembly of the State of Maryland, approved March 30th, 1868, chapter 471, it is provided, that in every church or religious society, or congregation, of whatever sect, order or denomination, or which shall at any time hereafter be known and acknowledged in the State, and protected in the free and full exercise of its religion by the Constitution and laws thereof, there shall be sufficient power and authority in all persons above twenty-one years of age, belonging to any such church, society or congregation, to elect, at their discretion, certain sober and discreet persons, not less than four nor more than twelve, which persons so elected, upon being registered, as hereinafter directed, shall be constituted a body politic or corporate, to act as trustees in the name and behalf of the particular church, society or congregation for which they are respectively chosen, to manage the estate, property, interest and inheritance of the same. Now, therefore, we, the subscribers, members of Towsontown Station, Methodist Episcopal Church, assembled in pursuance of notice, being part of a religious denomination, known and acknowledged in the State of Maryland, and protected in the free and full exercise of its religion, by the Constitution and laws thereof, being desirous of forming a body politic and corporate as provided in said Act, have agreed to elect and have this day

elected the following named five persons, to wit: Oliver P. Merryman, John T. Ensor, Henry L. Bowen, Daniel Shealey and Edward J. Ruter, together with the minister who may at any time be in charge of the said Towsontown Station, as trustees, in the name and on the behalf of said church, under and by virtue of said Act. And we, the said members of said charge or station do also at this first election of said body politic and corporate, determine and fix upon the following plan, agreement and regulations, viz.,

1st. This corporation shall be known as " The Trustees of Towsontown Station of the Methodist Episcopal Church," and its duration shall be forty years.

2nd. The trustees duly elected as aforesaid, to wit: Oliver P. Merryman, John T. Ensor, Henry L. Bowen, Daniel Shealey, Edw. J. Ruter, and the minister aforesaid, shall hold their office until the meeting of the fourth quarterly conference of the present year, held in accordance with the discipline of the Methodist Episcopal Church, when an election for trustees shall be held in pursuance of the regulations of said discipline, and like elections shall be held thereafter annually in accordance with the said disciplinary regulations. Provided, nevertheless, that said trustees shall be eligible for re-election.

3rd. The board of trustees elected annually according to the preceding provisions and regulations shall consist of not less than five, nor more than nine persons, a majority of whom shall be members in good standing, (for at least one year preceding such election,) of the Methodist Episcopal Church.

4th. The minister in charge of said station shall be *ex officio* president of the board of trustees. In case of the death or absence of said minister, the other trustees may appoint a chairman *pro tempore*.

5th. All the lands and tenements with their appurtenances now held for the use of said station, and all other property of said Towsontown Station Methodist Episcopal

Church, shall be and is hereby invested in the same corporation and their successors forever; and said corporation shall be and are hereby declared to be capable of bargaining, acquiring, receiving, selling, leasing, mortgaging, encumbering or conveying or making any disposition of said property, or of any other property they may hereafter acquire as fully and effectually as any person or corporate body may or can do.

6th. The board of trustees shall meet whenever called together by the minister, or by a majority of themselves, and at all meetings of said board, three shall constitute a quorum for the transaction of business.

7th. The powers and authority hereby given to the trustees aforesaid, or to their successors, shall not in any wise be understood to prevent, prohibit or take from the ministers or preachers of the Methodist Episcopal Church, duly authorized and appointed according to the discipline of said church, the pastoral use and enjoyment of any house of worship, parsonage or other property held by said trustees.

8th. The powers and authority given to said trustees, shall not be understood to interfere with the economy of the Methodist Episcopal Church, in the arrangements made by the discipline of said church, for the support of the pastor, or the maintenance of benevolent collections.

9th. An addition or amendment may be made to these articles by two-thirds of the members of the Methodist Episcopal Church, within the bounds of said Towsontown station, who may be publicly called for that purpose, by notice given on the preceding Sabbath.

Signed by the subscribers:

| | |
|---|---|
| John W. Cornelius, | R. J. Smithy, |
| James Shiraden, | William Sheaby, |
| H. W. Shealey, | Gideon Herbert, |
| T. Quinn, | Emily Lee. |

STATE OF MARYLAND,
                    *Baltimore County, to wit :*

Before me, the subscriber, a justice of the peace for Baltimore County, Maryland, personally appeared the above named persons, on this fourteenth day of October, eighteen hundred and seventy, and acknowledged this to be their act and deed.

MORDECAI ALBAM, J. P.

I, George Yellott, one of the Judges of the Circuit Court for Baltimore County, hereby certify, that the foregoing articles of incorporation and acknowledgment, have been submitted to me for examination, and I further certify that the same is in conformity with the law in such cases made and provided.

Given under my hand, this fourteenth day of October, eighteen hundred and seventy.

GEO. YELLOTT.

The signatures of the parties and the clerk, and justice and Judge of the Circuit Court of Baltimore County, being admitted, and being also admitted that Ady was clerk, and Albam a justice of the peace, and Yellott one of the Judges of the Circuit Court of Baltimore County, to which evidence the defendant objected, and the Court sustained the objection, and refused to allow the introduction of the evidence. The plaintiff excepted.

*Fourth Exception.*—The plaintiff then proposed to read in evidence, the certificate of incorporation mentioned in the plaintiff's third bill of exceptions, and to follow it up by proof of the several acts of user of the corporate franchise, mentioned in the first and second bills of exceptions of the plaintiff. And the defendant objected, and the Court sustained the objection, and refused to allow the evidence to be introduced. The plaintiff excepted.

The jury rendered a verdict for the defendant, and judgment was entered accordingly. The plaintiff appealed.

The cause was argued before STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.

*Wm. A. Fisher* and *Orville Horwitz,* for the appellant.

Where a corporation has gone into operation, and rights have been acquired under it, every presumption should be made in favor of the legality of its organization. *Hagerstown Turnpike Co. vs. Creeger,* 5 *H. & J.,* 125 ; *Busey vs. Hooper,* 35 *Md.,* 30.

The acts of user which the plaintiff proposed to prove, estop the defendant from denying the legality of its incorporation as against a party who has dealt and contracted with it as a corporation on the faith of such acts. *Dutchess Cotton Manf. Co. vs. Davis,* 14 *Johns.,* 245 ; *Eaton vs. Aspinwall,* 19 *New York,* 121 ; *Dooly vs. Cheshire Co.,* 15 *Gray,* 494 ; *U. S. Ex. Co. vs. Bedbury,* 34 *Ill.,* 459 ; *Scaggs vs. Balt. & Washington R. R. Co.,* 10 *Md.,* 280, 281 ; *Callender vs. Painesville Co.,* 10 *Ohio State,* 516 ; *White vs. Coventry,* 29 *Barbour,* 305 ; *Hamtramck vs. Bank,* 2 *Missouri,* 169 ; *Williams vs. Cheney,* 3 *Gray,* 220 ; *Topping vs. Bickford,* 4 *Allen,* 120 ; *Jones vs. Cincinnati Type Co.,* 14 *Ind.,* 89 ; *Brookeville T. Co. vs. McCarty,* 8 *Ind.,* 392.

The acts of user offered to be proved by plaintiff, estopped the defendant from denying the sufficiency of their organization, or from setting up any irregularity in their certificate, as against the plaintiff. *Methodist Episcopal Church vs. Pickett,* 19 *New York,* 482 ; *Wilmington R. Co. vs. Thompson,* 7 *Jones,* 387 ; *Commonwealth vs. Bateman,* 105 *Mass.,* 53 ; *Tarbell vs. Page,* 24 *Ill.,* 46 ; *Leonardsville Bank vs. Willard,* 25 *N. Y.,* 574 ; *Buffalo R. R. Co. vs. Cary,* 26 *N. Y.,* 75 ; *Ewing vs. Robeson,* 15 *Ind.,* 26 ; *U. S. Express Co. vs. Lucas,* 36 *Ind.,* 361 ; *Hager vs. Cleveland,* 36 *Md.,* 476 ; *New York Car Oil Co. vs. Richmond,* 6 *Bosw.,* 213.

These cases establish as a rule of law, that persons who are not in fact regularly incorporated, or even incorporated

at all, may so deal with others as to estop themselves, as against those others, from denying that they are incorporated.

It is not a question whether corporate franchises may be obtained in any other way than that pointed out by law, so as to enable the persons seeking to use them, to enjoy them as if granted legally, but it is whether as against one towards whom they have assumed to act as a corporation, and from whom they derived advantages by such assumption, such persons will be permitted to come into Court, and to the injury of him with whom they have so dealt, allege that they have misled and deceived him.

For the benefit of the person thus sought to be injured and defrauded, we submit that the Court will say, not that the defendants are a corporation to all intents, but that they shall not deny it, as against him to whom they have asserted it for their own advantage.

This rule of estoppel has been carried so far as to prevent the State itself from denying that a corporation has been duly organized.

In proceedings on the part of the State by information in the nature of a *quo warranto* against a corporation for the purpose of forfeiting its charter, if the information, *subpœna,* &c., are against the corporation, and the subsequent proceedings conform thereto, it is too late to question the existence of the corporation upon the ground of its non-performance of conditions precedent to its corporate existence, because the State waives the performance of these conditions, through such acts and admissions of its own officers, or is estopped from asserting their non-performance. *Commercial Bank vs. State,* 6 *Smedes & M.,* 614, 615 ; *People vs. Niagara Bank,* 6 *Cowen,* 196 ; *Bank of Auburn vs. Aikin,* 18 *Johns.,* 137 ; *Wood vs. Jefferson County Bank,* 9 *Cowen,* 194 ; *Utica Ins. Co. vs. Tillman,* 1 *Wendell,* 555 ; *People vs. Saratoga R. Co.,* 15 *Wendell,* 125.

Boyce *vs.* Trustees, &c , of the M. E. Church.

There is no such irregularity in the certificate of incorporation of the defendant in this case, as in view of the proof of user, and of its dealing with the plaintiff should invalidate it.

The certificate of the Judge is final as to the validity of the charter. *Grignon's Lessee vs. Astor*, 2 *Howard*, 338, 340-1-2 ; *Powles vs. Dilly*, 9 *Gill*, 241 ; *Anacosta Tribe vs. Murbach*, 13 *Md.*, 91 ; *Balto. & Havre de Grace T. Co. vs. N. C. R. R.*, 15 *Md.*, 193.

The rule of estoppel upon which we insist, raises none of the questions that arise in cases like that in 14 *California*, 126 ; 11 *Gray*, 140, and other cases of the same nature relied upon by the appellee. In those cases the suits were between creditors of corporations seeking to enforce the personal liability of stockholders, and the latter were permitted to question the validity of the incorporations. But there was no reason to apply the doctrine of estoppel to them. They were sought to be charged with a statutory liability, and among the elements of that liability, is necessarily the fact that there is a corporation. It is a necessary allegation to establish the liability, and is put in issue by the pleas. The defendants had done nothing to estop themselves from raising such an issue.

But even in such cases, the defendant may, by his own act, estop himself from setting up that defence. *Hager vs. Cleveland*, 36 *Md.*, 476.

*Arthur W. Machen*, for the appellee.

Where a corporation is created by statute, or formed under a general statute which requires certain acts to be done before it can be considered as *in esse*, there, those acts must appear to have been done in order to establish the corporate existence. *Lord vs. Essex Building Association*, 37 *Md.*, 325.

The fact of the incorporation was put directly in issue by the pleadings, and it was incumbent on the plaintiff to maintain the affirmative of the issue.

Boyce *vs.* Trustees, &c., of the M. E. Church.

The Judge's certificate, given without jurisdiction, does not affect the case. *Oler vs. Baltimore & Randallstown R. R. Co.*, 41 *Md.*, 583.

In such a case there is no room for the principle of estoppel. That which does not exist cannot be estopped. There is no defendant in Court, unless there be a corporation. How can judgment go against a nonentity? If the alleged corporation has no being, it can no more be estopped, or perform those acts *in pais*, from which an estoppel may be raised, than it can contract or exercise any other function of corporate life.

Even where there is no question of the existence of the corporation, and the question simply is as to its *power* to do the act, with the consequences of which it is sought to charge it, it is clearly settled that there can be no estoppel as to an act *ultra vires*. As tersely put by Mr. McMahon, *arguendo,* "*Was there ever an estoppel against a legal disability.*" 8 *G. & J.*, 307.

In *Pennsylvania Steam Navigation Company vs. Dandridge*, 8 *G. & J.*, 248 it was held, that the fact that a corporation has entered into a contract does not estop it from denying its competency to do so, in an action brought against it founded upon such contract.

No corporation has any power which is not either directly conferred by its charter, or necessarily incident to some power which is conferred. Before it can be seen that it can bind itself at all, the charter must be inspected, and the power found there. Now, if the supposed corporation has no right to do *any thing*—not even to exist—it is certain it could not bind itself for the particular matter, whatever it may be, which constitutes the cause of action. *Weckler vs. First National Bank*, 42 *Md.*, 581; *Worthington vs. Savage Man. Co.*, 1 *Gill,*284 ; *Head vs. Providence Insurance Co.*, 2 *Cranch*, 127.

In *Hood vs. New York & New Haven Railroad Company*, 22 *Conn.*, 502, the Supreme Court of Errors of

Boyce *vs.* Trustees, &c., of the M. E. Church.

Connecticut affirmed and followed *Pennsylvania Steam Navigation Company vs. Dandridge.*

But as we say, it does not require a *legal possibility;* and where there is none, Courts cannot consistently hold, there is an estoppel.   22 *Conn.,* 508, 509.

There can be no estoppel for another reason, stated by Lord HATHERLEY.   Every person dealing with a corporation whose instrument of organization is required by Statute to be registered, is chargeable with notice of its recorded charter.   *Mahoney vs. East Holyford Mining Company, Law Rep.,* 7 *Ho. Lds.,* 893 ; and see *Casey's Lessee vs. Inloes,* 1 *Gill,* 432.

An act *ultra vires* is incapable of ratification, even by the unanimous assent of the shareholders.   *Ashway Railway Carriage & Iron Co. vs. Riche, Law Rep.,* 7 *Ho. Lds.,* 653.

The cases cited by the appellant's counsel, where, after a certificate of incorporation valid under the law has been filed, and some further act *in pais* was required to be performed, the production of the certificate and evidence of user under it, have been held to raise a presumption of the performance of the condition subsequent, whether all those cases have been rightly decided or not, have no application here.   In a case of that kind, there is a valid charter and an organization and existence under it, which, though liable to be avoided by the State, continue until the sovereign power does interfere.   It is the case of a corporation *de facto,* though not *de jure.*   The corporation had begun to exist, and was capable of continuing in being.   Here, there is *no* corporation at all.

Nor do the cases where, a power being vested in a corporation, though conditions have been imposed upon its exercise, it has been held, that the corporation may, under some circumstances, estop itself to deny that those conditions have been fulfilled, have any application.   The distinction is between an entire absence of power, and a power

conferred, but only lawfully to be exercised in a certain manner. *Mercer County vs. Hacket,* 1 *Wall.,* 92.

The *dictum* in *Dutchess Co. Man. Co. vs. Davis,* 14 *Johns.,* 245, has been overruled in 7 *Wend.,* 541.

*Cochran vs. Arnold,* 58 *Penn.,* 399, another case relied on by the appellant, does not touch the present question. As stated in the opinion: " A certificate of association for corporate purposes, was made out and recorded. It set forth *all that the law required.* It was *entirely regular on its face.* A certified copy of it was filed in the office of the Secretary of the Commonwealth. *Ostensibly the requirements of the law were fully met."* 58 *Penn.,* 404: and see *U. S. Bank vs. Stearns,* 15 *Wend.,* 314.

The proposition contended for by the appellant's counsel would be as inconvenient in practice as it is illogical and unsound. If, whenever certain individuals choose to call themselves a corporation, and conduct business in the name of the supposed corporation, a corporation *de facto* is thereby created, a high attribute of sovereignty becomes unnecessary, all statutory restrictions and guards become nugatory, and any partnership may practically become a corporation.

But what kind of corporation is it, if it has no powers? No principle is better established than that all the corporate powers must be found expressed · in the charter, or necessarily incident to those powers which are expressed. How would it advance the plaintiff to hold that a corporation may be considered as existing, if it is impossible that any cause of action can be established against it for want of a charter conferring power to make the contract out of which it is to arise?

There is no room for presumption or estoppel ; for, the plaintiff having produced the alleged instrument of incorporation, the truth appears, and it is manifest that the provisions of the law have not been complied with, and that no incorporation was effected.

STEWART. J., delivered the opinion of the Court.

From a careful consideration of the case, we find no error in the rulings of the Circuit Court, in the four exceptions taken by the appellant.

The controlling question to be determined under the first plea of the appellee of *nul tiel* corporation, is, whether any or all of the evidence offered on the part of the appellant in the said exception, and refused by the Court was sufficient to show, that the appellant could be held to be a corporation *de jure* or *de facto;* or to estop the appellee from disputing its liability as a corporation.

The Act of 1868, ch. 471, in its 14th sec. provides, amongst other things, for the incorporation of religious societies; and by secs. 151, 162, 163 and 164, for religious corporations.

These last provisions are more especially applicable to the organization of a church religious society, or congregation of whatever denomination which the appellee professes to be, and it is to be presumed were intended for such purpose

Amongst other requisites to constitute a religious corporation, church, religious society or corporation under these last sections, it was necessary that the agreement for that purpose should be acknowledged by the trustees or a majority of them, before two justices of the peace of the county or city in which the church, congregation or society, or the greatest number of the members shall reside, or before a Judge of the Circuit Court, or of the Supreme Bench of Baltimore, and certified by the said justices or Judge according to the directions of sec. 163.

No authority having been given to the Judge by these provisions, to determine that the law had been complied with, his certificate is not sufficient evidence that the defendant is a corporation.

But the appellant has undertaken to offer evidence of certain acts and proceedings of the appellee, referred to in

the exceptions, to show that it held itself out as a corporation, and treated with the appellant as such, and is estopped from denying its liability as a corporation.

We think it would be extending the doctrine of *estoppel* to an extent, not justified by ·the principles of public policy, to allow it to operate through the conduct of the parties concerned, to create substantially a *de facto* corporation, with just such powers as the parties may by their acts give to it.

This would be substituting the dealings of the parties, for compliance with the requirements of the law, and giving to them the same effect through the aid of the Courts. Thus, virtually, through the Courts, recognizing the existence of the corporation, in manifest disregard of the written law.

It has been determined by this Court, that a corporation cannot bind itself in excess of its powers. *Penna. Steam Navigation Co. vs. Dandridge,* 8 *G. & J.,* 319.

Whilst denying its capacity upon any principle of estoppel, to make contracts *ultra vires,* to bind itself; it would not be consistent with that theory to recognize its *existence ad libitum,* according to the conduct of the parties concerned.

Such a principle would seem to affix no other limit to the existence of the corporation *de facto,* or the extent of its power than the dealings of the parties, through the recognition of the Courts, might, upon the doctrine of estoppel, prescribe.

It would be more reasonable to hold corporations to their contracts, though *ultra vires,* of which they have received the benefit, or to prevent parties who have contracted with them, and received the benefit therefrom, from defeating their liability, on the ground of want of power in the corporation, as is held in quarters of high authority, (see note and references in *2nd Kent,* 351,) than to hold that corporations should be deemed to have existence, because they had so held themselves out.

The statute law of the State, expressly requiring certain prescribed acts to be done to constitute a corporation, to permit parties indirectly, or upon the principle of estoppel, virtually to create a corporation for any purpose, or to have acts so construed, would be in manifest opposition to the statute law, and clearly against its policy, and justified upon no sound principle in the administration of justice.

*Judgment affirmed.*

(Decided 8th March, 1877.)