DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

### NOVEMBER TERM, 1920.

---

TERESA C. FRAWLEY, RESPONDENT, v. TENAFLY TRANS-
PORTATION COMPANY, A CORPORATION, APPEL-
LANT.

---

TERESA C. FRAWLEY, ADMINISTRATRIX, ETC., OF THE
ESTATE OF JOHN F. FRAWLEY, DECEASED, RESPOND-
ENT, v. TENAFLY TRANSPORTATION COMPANY, A
CORPORATION, APPELLANT.

---

TERESA C. FRAWLEY, ADMINISTRATRIX, ETC., OF THE
ESTATE OF VINCENT C. FRAWLEY, DECEASED, RE-
SPONDENT, v. TENAFLY TRANSPORTATION COMPANY,
A CORPORATION, APPELLANT.

Argued November 24, 1920—Decided March 7, 1921.

1. Where three individuals signed a certificate of incorporation two
   days before the happening of an accident for which the company
   was sued for damages, which certificate was recorded in the
   county clerk's office the day after the accident and filed in the
   secretary of state's office four days after the accident, and they
   did certain acts in attempted execution of the powers conferred
   by the certificate of incorporation, a jury was justified in find-
   ing that the company was, at the time of the accident, a corpo-
   ration *de facto*, and therefore liable.

2.  A charge by the trial judge to the jury that the signing of a
    certificate of incorporation was an element to be considered, but
    did not constitute a *de facto* corporation, unless, after that step
    had been taken, the corporators did any act that would show
    that they were using corporate powers which they had attempted
    to assume—*Held*, correct.

On appeal from the Supreme Court.

For the respondent, *Guy L. Fake* and *Harold Bouton*.

For the appellant, *John W. McGeehan, Jr.*

The opinion of the court was delivered by

WALKER, CHANCELLOR.   This is an appeal from each of
three judgments in the Supreme Court recovered by the
above-named plaintiff in three actions at law brought in the
Supreme Court tried at the Bergen Circuit before Judge
Cutler and a jury. The cases, which arose out of the same
accident, were tried together and involve common questions
of law and fact. All of the questions raised on these appeals
apply equally and the same to each of the three cases, were
argued together and will be so decided.

The facts appearing from the evidence are as follows:   On
April 25th, 1919, the plaintiff, Teresa C. Frawley, John F.
Frawley, her husband, and Vincent C. Frawley, her son, were
passengers in a jitney bus which collided with another jitney
bus on Jay street, in the borough of Tenafly, and in the col-
lision each of the persons named sustained serious injuries, as
a result of which John F. Frawley and Vincent C. Frawley
died, and the three suits were instituted by Teresa C. Fraw-
ley, individually, for personal injuries sustained by her, one
by the same Teresa C. Frawley, as administratrix *ad prose-
quendum* of her deceased husband's estate, and one by the
same Teresa C. Frawley, as administratrix *ad prosequendum*
of her deceased son's estate. Both of the jitney buses which
figure in the accident had the same ownership, but in whom
the title was vested or who employed the chauffeurs of the
buses at the time of the accident are questions which were sub-

mitted to the trial court and are involved in this appeal. The defendant-appellant in his brief admits that the evidence establishes that one or both of the chauffeurs of the jitney buses at the time of the accident was, or were, negligent, and that such negligence was the proximate cause of the plaintiff's and her intestates' injuries. The three suits were originally against the defendant-appellant as a corporation, Harry Sabin, Martin M. Rothbart, Ernest Capitani and David Shiffman, as copartners, jointly and severally as individuals doing business under the name of Tenafly Transportation Company. The defendant company denied that it was a corporation on April 25th, 1919, the date of the accident; denied that it was the owner of the buses in question, and denied its negligence, or the negligence of its servants or employes. It pleaded affirmatively that it was not a corporation on April 25th, 1919, and that it did not own or operate, by its servants or otherwise, the jitney buses referred to, and that its certificate of incorporation was filed with the secretary of state on April 29th, 1919, having been recorded in the Bergen county clerk's office on April 26th, 1919. These facts, as to recording and filing of the certificate of incorporation, were proved. Therefore, in order to recover, the plaintiff-respondent was required to show that the defendant company was a *de facto* corporation when the accident occurred, and was, at that time, the owner of the buses and the employer of the chauffeurs who operated them.

When the testimony was all in and the case rested, a motion was made for a nonsuit on behalf of the defendant company, upon the ground that its corporate existence at the time of the accident had not been proved, and upon the further ground that the ownership and operation of the buses at that time had not been proved. This motion was denied. A motion was then made to nonsuit on behalf of the defendant Harry Sabin. Plaintiff's counsel conceded that nothing had been shown against him and consented to the nonsuit, which was ordered entered. Motion was then made to nonsuit as to the other three defendants, namely, Rothbart, Capitani and Shiffman, on the ground that the evidence did not show any

liability on their part.. .This motion was overruled. A motion was then made to compel the plaintiff to elect whether to proceed against the corporation or the other three defendants remaining in the case. This motion was overruled and an exception prayed and allowed. The defendant then rested and moved for the direction of a verdict upon the ground that the plaintiff had not proved corporate existence at the time of the accident, the same as in the motion to nonsuit. Motion was also renewed to make plaintiff elect which of the defendants she would proceed against, either the corporation or the individuals. The motion to direct a verdict was refused and an exception granted. The motion to compel an election was refused and an exception granted. The latter motion was out of place at that time. It had nothing to do with the direction of a verdict and had already been made and refused.

The trial judge charged the jury that they should find what party was liable, whether the corporation or the individual defendants. The verdicts as rendered by the jury do not appear in the state of the case. The *postea* in each case recites that the jury rendered a verdict against the defendant, Tenafly Transportation Company, Incorporated, and in favor of the plaintiff, for the amount named in it. It may be presumed that they found in favor of the individual defendants.

On April 2d, 1919, the buses in question were owned by the New Jersey Transportation Company, and, on that day, were sold to the four individuals above named. They commenced the operation of the buses in their business. On April 9th, 1919, they applied to the borough of Tenafly, in the name of the Tenafly Transportation Company, Incorporated, for an owner's license for the two buses in question, and filed with the borough an insurance policy in the name of the corporation, pursuant to the provisions of a borough ordinance, agreeing therein to operate the buses in strict conformity with the provisions of the ordinance. This application was granted on April 10th, 1919. On April 11th they applied for and obtained from the authorities at Camp Merritt a

license to operate the buses at the camp in the name of Tenafly Transportation Company, representing it as a corporation. On April 23d, 1919, Rothbart, Shiffman and Capitani signed and sealed a certificate of incorporation of the "Tenafly Transportation Company." This certificate was received in the Bergen county clerk's office on April 26th, 1919, and there recorded. It was filed in the office of the secretary of state on April 29th, 1919. On April 23d, 1919, the date on which the certificate of incorporation was signed, Rothbart, Shiffman and Capitani made and executed to the "Tenafly Transportation Company, a corporation," for the consideration therein expressed, a bill of sale for ten buses described by numbers in a schedule annexed, including the two in question. The bill of sale ran to the corporation, its successors and assigns. These three men intended to form a corporation. The first certificate drawn for them was not executed because they changed their minds about the amount of capital stock. The second certificate, the one executed April 23d, was drawn from instructions previously given by the three men. It was sent to them by counsel with directions to have it executed, which they did. It was returned to counsel on or about April 24th, 1919, and on April 25th he mailed it to the Bergen county clerk, who recorded it, and in a day or so returned it to counsel, and he then on or about April 27th mailed it to the secretary of state for filing. On April 25th, 1919, the day of the accident, and previously, the company had an office for the transaction of business in the borough of Tenafly, where a stenographer and bookkeeper were employed. Drivers of the two cars in question were employed and paid with money contained in envelopes on which was printed "Tenafly Transportation Company, Incorporated;" there was also a garage connected with the office, at which the cars were kept, and Rothbart, one of the incorporators, was acting as president of the corporation, by agreement with the other two incorporators. The defendants did not testify, and there is no affirmative evidence that they did business as a partnership or as individuals in the name of the Tenafly Transportation Company or otherwise. It is

noticeable that the company was sometimes called "Tenafly Transportation Company, Incorporated," and sometimes "Tenafly Transportation Company;" but this is unimportant, except to show that the three associates were bent upon having their company incorporated and to have it known as a corporation. It was, as already observed, actually incorporated as "Tenafly Transportation Company."

The grounds of appeal, which are the same in each case, are (1) because the court failed and refused to grant the motion for nonsuit made by the defendant at the close of the plaintiff's case; (2) because the court failed and declined to direct a verdict for the defendant, Tenafly Transportation Company, Incorporated, in accordance with the motion of the defendant at the close of the evidence in the trial of the case. The third, fourth and seventh grounds of appeal are abandoned, and appear to be covered in the fifth and sixth grounds. The latter two pertain to the charge of the trial judge.

As to the question of *de facto* corporation, which is the principal ground involved in the motion to nonsuit and direct a verdict. By our act concerning corporations (*Rev.* 1896; *Comp. Stat., p.* 1595, § 10) it is provided that upon making the certificate of incorporation and causing the same to be recorded in the office of the county clerk and filed in the office of the secretary of state, the persons so associated, their successors and assigns, shall from the date of such filing be and constitute a body corporate. It is argued from this that the corporation defendant was not a body corporate on the day of the accident because its certificate was not recorded in the county clerk's office until the day afterward, and not filed in the secretary of state's office until four days afterward. The answer is, that it was, nevertheless, a *de facto* corporation.

In *Vanneman* v. *Young*, 52 *N. J. L.* 403, a certificate of incorporation was recorded in the county clerk's office but was not filed in the secretary of state's office until upwards of eight months afterward. In the interim between the recording and filing of the certificate the corporation purchased

certain materials, and, subsequently, suit was brought for the price against the persons who had associated themselves for the formation of the company, it being insisted that as the certificate had not been filed at the time of the purchase, incorporation had not taken place, and, therefore, the associates were liable as partners. The question of *de facto* corporation was therefore raised, and this court said (at *p.* 404):

"The statute above mentioned authorized the incorporation of the associates. The *bona fides* of their attempt to incorporate themselves in accordance with its provisions is unquestioned, and the contract of the plaintiff was entered into upon the assumption that he was dealing with a corporation *de jure.* The failure of the associates to observe exactly the directions of the statute did not in the least impair the rights which the plaintiff intended to secure by his contract. Under these circumstances, the plaintiff cannot bring into question the legality of the incorporation.

" 'Where the law authorizes a corporation, and there is an effort in good faith to organize a corporation under the law, and, thereupon, as a result of such effort, corporate functions are assumed and exercised, the organization becomes a corporation *de facto,* and, as a general rule, the legal existence of such a corporation cannot be inquired into collaterally, although some of the legal formalities may not have been complied with. Ordinarily, such an inquiry can only be made in a direct proceeding brought in the name of the state. * * * No private person having dealings with a *de facto* corporation can be permitted to say that it is not also a corporation *de jure.* '" Citing cases.

It is true that the court then observed that the recording and filing of the certificate are not made by the statute a condition precedent to the legal existence of the corporation; that they are merely necessary evidence of such existence, that evidence being produced, the legal existence of the corporation from the time of commencement fixed in the certificate was proved.

Now, the statute under which the corporation before the court in Vanneman v. Young was organized, was that found in the *Rev., p.* 175, § 13, which provided that upon making the certificate and causing the same to be recorded and filed, the persons so associating, their successors and assigns, should from the time of commencement fixed in the certificate be incorporated into a company. It is not perceived that there is any real difference between the language employed in the first corporation act, namely, that "upon making said certificate and causing the same to be recorded and filed as aforesaid, the said persons so associating, their successors and assigns, shall be, from the time of commencement fixed in said certificate, * * * incorporated into a company," and the language of our present Corporation act that "upon making the certificate of incorporation and causing the same to be filed as aforesaid, the persons so associating, their successors and assigns, shall from the date of such filing be and constitute a body corporate." The language in the two sections is practically the same. In the Vanneman case it was impossible for the corporation to become such *de jure* until the certificate was filed because it was only upon the consummation of the last act, namely, filing, that the associates would become a body politic from the time of the commencement fixed in the certificate. And yet in that case the contract sued on was made before the filing of the certificate (the exact date not being given), and it was held that the corporation was one *de facto*. And, in the instant case, it was just as impossible for the corporation to become such *de jure* until the certificate was *filed*, because it was only upon such filing that the associates would become a body politic from the date of that act. In other words, in the Vanneman case the corporation became such upon the *filing of the certificate,* and, likewise, in the instant case, the corporation became such upon the *filing of the certificate*. The requirement is just the same under each statute, namely, that corporate existence shall come into being only upon the filing of the certificate; the only difference in the two statutes is as to the time cor-

porate existence shall commence—in the first one at the time fixed in the certificate, and in the present one on filing the certificate. Therefore, if, as in the Vanneman case, there could be a corporation *de facto* before the filing of the certificate, so equally in the present case there can be a corporation *de facto* before the filing of the certificate. If, as in the Vanneman case, the recording and filing of the certificate are not made by the statute then in existence, a condition precedent to the legal existence of the corporation, then in the instant case the present statute does not make the recording and filing of the certificate a condition precedent to the legal existence of the corporation. The suggestion of this court, in the Vanneman case, that if the statute made the recording and filing of a certificate of incorporation a condition precedent to its legal existence, it could have no existence otherwise, is not to be construed as holding that mere fixing by the statute of the time when corporate existence shall commence prevents a corporation from having an existence *de facto* before that time, for, if this were so, the decision in the Vanneman case must have been that there was no corporation *de facto* in that case. What was meant was, that in the absence of an express statutory provision that a corporation could have *no* existence unless and until the certificate was filed, a corporation *de facto* could exist before that time. That is clearly the effect of the decision in the Vanneman case. There is not discoverable in section 10 of the present Corporation act any legislative intention to repeal or abrogate any of the beneficent provisions of the common law with reference to the existence of corporations *de facto*.

In *McCarter* v. *Ketcham*, 72 *N. J. L.* 247, it appeared that on a day while the earlier Corporation act was in force, certain persons signed a certificate of incorporation, held the first meeting, elected officers and did business. The certificate was filed in the county clerk's office, *but was never filed in the secretary of state's office;* and yet this court held (at *p.* 253):

"The company was a fully organized, active corporation *de facto*. It needed only the filing of its certificate in the office

of the secretary of state to be a corporation *de jure*. When the corporations purchased from Holloway property which Holloway's creditors might reach, the rights of outside persons intervened, and the original stockholders and incorporators could not end the corporation by agreement among themselves to abandon the enterprise or by destroying the certificate of incorporation. *Bibb* v. *Hall*, 101 *Ala.* 79; *Aultman* v. *Waddle,* 40 *Kan.* 195."

And this in the face of the statute in existence at the time of the decision of the Vanneman case, which, as seen, provided that the company should become incorporated upon making, recording *and filing* its certificate.

In *Belvidere Water Co.* v. *Belvidere,* 82 *N. J. L.* 601, it was held (at *p.* 603):

"The question, therefore, is whether this action is maintainable in the name of the Belvidere Water Company. This depends not upon the *de jure* but upon the *de facto* existence of such corporation at the time suit was brought."

The only remaining question on this score is as to whether the facts in evidence justified the jury in finding the corporation defendant liable, and their verdict against the defendant corporation amounted to such finding. It included a finding that the three individual defendants had attempted *bona fide* to form a corporation and that they had likewise done acts which amounted to the exercise of corporate powers. There was evidence from which the jury could draw these conclusions, and it is settled law that on appeal to this court if there be any evidence warranting the finding of facts in the court below, its judgment on that score will be sustained. The bill of sale for the buses in question made by the individual defendants to the defendant company, and their operation by that concern as a *de facto* corporation, dispose of the contention that there was no proof to show ownership of the machines by the company. Therefore, the overruling of the motions to nonsuit and direct a verdict was right. This leaves only the fifth and sixth grounds of appeal, pertaining to the charge of the court, to be considered.

The fifth ground of appeal is as follows:

5. Because the court charged the jury, in part, as follows:

"Before the plaintiffs in this case can recover against this corporation, they must show that after they had become a *de facto* corporation by signing the paper, they had gone further than that, they had done some act in the use of that corporation. Now, what had they done? That is for you, gentlemen, to say, whether there has been."

The next ground, which concerns the charge delivered to the jury when called back by the court, is so entirely related to the preceding one that they will be considered together. It is:

6. Because the court charged the jury, in part, as follows:

"Gentlemen, counsel seem to have the impression that in my charge I intimated to you, or said to you, that the signing of the certificate of incorporation constituted and made these defendants a *de facto* corporation. That is an element to be considered, but it does not constitute them a *de facto* corporation unless, after they had taken that step, they did some act that they would have a right to do, if they had been a legal corporation. And that, gentlemen, is one of the questions for you to determine, whether, after the 22d or 23d of April, when this certificate was signed, this corporation, or these defendants, considering themselves such a corporation, did any corporate act that would show that they were using the corporate powers which they had attempted to assume."

Together and in effect these excerpts from the charge gave the jury to understand that the mere signing of the certificate of incorporation by the associates did not constitute them a *de facto* corporation, but that, for the company to have that character, the corporators must go further and do some corporate act or acts in attempted execution of the powers conferred by the certificate of incorporation. And this was right, as appears from the cases above cited. Furthermore, it was favorable to the defendant.

The views above expressed lead to an affirmance of the three judgments under review.

· *For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, BERGEN, BLACK, GARDNER, JJ.  6.

