## CRANSON *v.* INTERNATIONAL BUSINESS MACHINES CORPORATION

[No. 245, September Term, 1963.]

478

*Decided April 30, 1964.*

The cause was argued before HENDERSON, HAMMOND, HOR-
NEY, MARBURY and SYBERT, JJ.

*William J. Brannan, Jr.,* with whom were *Kardy, Brannan
& Neumann* on the brief, for the appellant.

*Henry J. Noyes* for the appellee.

HORNEY, J., delivered the opinion of the Court.

On the theory that the Real Estate Service Bureau was
neither a *de jure* nor a *de facto* corporation and that Albion C.
Cranson, Jr., was a partner in the business conducted by the
Bureau and as such was personally liable for its debts, the In-
ternational Business Machines Corporation brought this action
against Cranson for the balance due on electric typewriters pur-
chased by the Bureau. At the same time it moved for summary
judgment and supported the motion by affidavit. In due course,
Cranson filed a general issue plea and an affidavit in opposition
to summary judgment in which he asserted in effect that the
Bureau was a *de facto* corporation and that he was not per-
sonally liable for its debts.

The agreed statement of facts shows that in April 1961,
Cranson was asked to invest in a new business corporation
which was about to be created. Towards this purpose he met
with other interested individuals and an attorney and agreed
to purchase stock and become an officer and director. There-
after, upon being advised by the attorney that the corporation
had been formed under the laws of Maryland, he paid for and
received a stock certificate evidencing ownership of shares in
the corporation, and was shown the corporate seal and minute
book. The business of the new venture was conducted as if it
were a corporation, through corporate bank accounts, with audi-
tors maintaining corporate books and records, and under a lease

entered into by the corporation for the office from which it operated its business. Cranson was elected president and all transactions conducted by him for the corporation, including the dealings with I.B.M., were made as an officer of the corporation. At no time did he assume any personal obligation or pledge his individual credit to I.B.M. Due to an oversight on the part of the attorney, of which Cranson was not aware, the certificate of incorporation, which had been signed and acknowledged prior to May 1, 1961, was not filed until November 24, 1961. Between May 17 and November 8, the Bureau purchased eight typewriters from I.B.M., on account of which partial payments were made, leaving a balance due of $4,333.40, for which this suit was brought.

Although a question is raised as to the propriety of making use of a motion for summary judgment as the means of determining the issues presented by the pleadings, we think the motion was appropriate. Since there was no genuine dispute as to the material facts, the only question was whether I.B.M. was entitled to judgment as a matter of law. The trial court found that it was, but we disagree.

The fundamental question presented by the appeal is whether an officer [1] of a defectively incorporated association may be subjected to personal liability under the circumstances of this case. We think not.

Traditionally, two doctrines have been used by the courts to clothe an officer of a defectively incorporated association with the corporate attribute of limited liability. The first, often referred to as the doctrine of *de facto* corporations, has been applied in those cases where there are elements showing: (1) the existence of law authorizing incorporation: (2) an effort in good faith to incorporate under the existing law; and (3) actual user or exercise of corporate powers. Ballantine, *Private Corporations,* § 23; 8 Fletcher, *Cyclopedia of the Law of Private*

---

1. Although we are concerned with the liability of an "officer" in this case, the principles of law stated herein might under other circumstances be applicable to a determination of the liability of a member or shareholder of a defectively organized corporation.

*Corporations,* § 3777; 13 Am. Jur., *Corporations,* §§ 49-56; 18 C.J.S., *Corporations,* § 99. The second, the doctrine of estoppel to deny the corporate existence, is generally employed where the person seeking to hold the officer personally liable has contracted or otherwise dealt with the association in such a manner as to recognize and in effect admit its existence as a corporate body. Ballantine, *op.cit.,* § 29; Machen, *Modern Law of Corporations,* §§ 278-282; 18 C.J.S., *op.cit.,* § 109.

It is not at all clear what Maryland has done with respect to the two doctrines. There have been no recent cases in this State on the subject and some of the seemingly irreconcilable earlier cases offer little to clarify the problem.[2]

In one line of cases, the Court, in determining the rights and liabilities of a defectively organized corporation, or a member or stockholder thereof, seems to have drawn a distinction between those acts or requirements which are a condition precedent to corporate existence and those acts prescribed by law to be done after incorporation. In so doing, it has been generally held that where there had been a failure to comply with a requirement which the law declared to be a condition precedent to the existence of the corporation, the corporation was not a legal entity and was therefore precluded from suing or being sued as such. *Boyce v. M. E. Church,* 46 Md. 359 (1877); *Regester v. Medcalf,* 71 Md. 528, 18 Atl. 966 (1889); *Bonaparte v. Lake Roland R. R. Co.,* 75 Md. 340, 23 Atl. 784 (1892); *Jones v. Linden Building Asso.,* 79 Md. 73, 29 Atl. 76 (1894); *Maryland Tube Works v. West End Imp. Co.,* 87 Md. 207, 39 Atl. 620 (1898); *Cleaveland v. Mullin,* 96 Md.

---

2. Apparently because it was not requested to do so, the lower court did not undertake to prepare and file a memorandum of its reasons for deciding the problem as it did. But, inexcusably, the briefs were for the most part of no practical use to this Court in arriving at a decision of the intricate question of law presented by the appeal. While the appellant cited three Maryland cases for the proposition that a *de facto* corporation was created and the appellee cited one Maryland case for the proposition that a corporation cannot be created by estoppel, neither made an attempt to analogize or distinguish the numerous other Maryland cases touching the problem.

598, 54 Atl. 665 (1903) ; *National Shutter Bar Co. v. Zimmerman,* 110 Md. 313, 73 Atl. 19 (1909). These cases appear to stand for the proposition that substantial compliance with those formalities of the corporation law, which are made a condition precedent to corporate existence, was not only necessary for the creation of a corporation *de jure,* but was also a prerequisite to the existence of a *de facto* corporation or a corporation by estoppel.

In the *Boyce* case, an action in assumpsit against a defectively incorporated religious society, the Court (at p. 373 and p. 374), in holding that the society was not estopped to deny its corporate existence, said:

> "We think it would be extending the doctrine of *estoppel* to an extent, not justified by the principles of public policy, to allow it to operate through the conduct of the parties concerned, to create substantially a *de facto* corporation, with just such powers as the parties may by their acts give to it.

> \* \* \*

> "The statute law of the State, expressly requiring certain prescribed acts to be done to constitute a corporation, to permit parties indirectly, or upon the principle of estoppel, virtually to create a corporation for any purpose, or to have acts so construed, would be in manifest opposition to the statute law, and clearly against its policy, and justified upon no sound principle in the administration of justice."

In the *Maryland Tube* case, an action by a corporation for specific performance of a contract to convey land which it had entered into prior to its becoming a legal entity, the Court, having cited (at p. 217) the statements in *Jones v. Aspen Hardware Co.,* 40 Pac. 457 (Colo. 1895),[3] with approval for the

---

3. This case involved an action of replevin brought by a corporation for goods seized under a writ of attachment. The Colorado statute required the payment of a fee by persons forming a corporation to the Secretary of State "for incorporation and certain other privileges" and further provided that no such corpora-

proposition that " 'the doctrine of estoppel cannot be success-fully invoked, unless the corporation has at least a *de facto* existence,' " that " 'a *de facto* corporation can never be recognized in violation of a positive law' " and that " 'there is a broad distinction between those acts made necessary by the statute *as a prerequisite to the exercise of corporate powers,* and those acts required of *individuals seeking incorporation* but not made prerequisite to the exercise of such powers,' " went on to say (at p. 218) that "these principles were clearly recognized and applied" in the *Boyce* case.

In the *National Shutter Bar* case, an action by a corporation for an alleged libel which had occurred before the performance of a condition precedent necessary for legal incorporation, it was held—citing the *Maryland Tube* case for the proposition that statutory conditions precedent must have been complied with to give existence to corporations formed under general laws—that the corporation had no legal existence at the time of the alleged libel. In referring to the *Boyce* case, it was said (at p. 320) that "it has been held by our predecessors that a corporation cannot be actually or virtually created by estoppel in Maryland." And, on the basis of the statements in *Jones v. Aspen Hardware Co., supra* (also relied on in the *Maryland Tube* case), it was concluded that the corporation could not maintain the action.

On the other hand, where the corporation has obtained legal existence but has failed to comply with a condition subsequent to corporate existence, this Court has held that such nonperformance afforded the State the right to institute proceedings for the forfeiture of the charter, but that such neglect or omission could never be set up by the corporation itself, or by its members and stockholders, as a defense to an action to enforce their liabilities. *C. & O. Canal Co. v. B. & O. Railroad Co.,* 4 G. & J. 1 (1832) ; *Hammond v. Straus,* 53 Md. 1 (1880) ; *Murphy v. Wheatley,* 102 Md. 501, 63 Atl. 62 (1906).

tion "shall have or exercise any corporate powers or be permitted to do any business in this State until the said fee shall have been paid." It was held that the corporation did not have title to the property it sought to replevy since the goods had been transferred to it before the payment of the fee which was made a condition precedent to corporate existence by the statute.

484

In the *Hammond* case, an action by a creditor against a stockholder of a state bank on his statutory liability, the Court, after stating that a corporation or a stockholder could not defeat an action by showing noncompliance with the requirements of the corporation law unless the acts required are conditions precedent to corporate existence, said (at p. 15) :

> "By holding otherwise, parties might avail themselves of the powers and privileges of a corporation, without in any manner subjecting themselves to its duties and obligations, and might set up their own neglect of duty, of wilful omission to comply with the requirements of the statute, as means of discharge from all their just obligations under the law. This is forbidden by every principle of law and justice, and hence such a defense could never be tolerated."

It seems clear therefore that when a defect in the incorporation process resulted from a failure to comply with a condition subsequent, the doctrine of estoppel may be applied for the benefit of a creditor to estop the corporation, or the members or stockholders thereof, from denying its corporate existence. See Brune (Herbert M., Jr.), *Maryland Corporation Law and Practice* (rev. ed.), § 339.

In another line of Maryland cases which determined the rights and liabilities of a defectively organized corporation, or a member or stockholder thereof, the Court, apparently disregarding the distinction made between those requirements which are conditions precedent and those which are conditions subsequent to corporate existence, has generally precluded, on the grounds of estoppel or collateral attack, inquiry into the question of corporate existence. *Maltby v. Northwestern Va. R. R. Co.*, 16 Md. 422 (1860) ; *Franz v. Teutonia Building Asso.*, 24 Md. 259 (1866) ; *Grape Sugar & Vinegar Mfg. Co. v. Small*, 40 Md. 395 (1874) ; *Laflin & Rand Powder Co. v. Sinsheimer*, 46 Md. 315 (1877) ; *Keene v. Van Reuth*, 48 Md. 184 (1878) ; *Bartlett v. Wilbur*, 53 Md. 485 (1880) ; *Pott & Co. v. Schmucker*, 84 Md. 535, 36 Atl. 592 (1897). In the *Grape Sugar* case, an action against a defectively organized corporation to

recover the balance due for work done and materials furnished, the Court said (at p. 400) :

> "The second prayer proceeds upon the assumption that the [corporation] is not liable, provided the work was done prior to the recording of the certificate of incorporation. It is true, that under the general incorporation law of this State, the recording of the certificate was necessary to constitute the [corporation] a body politic. If, however, the contract was made with the [creditor] through * * * [the] President of the [corporation], after the certificate had been signed by the members of the proposed corporation, but before it was recorded, and the company, after its incorporation was complete, accepted the work done under the contract, it will be estopped, both in law and equity, from denying its liability, on account of the same."

Cf. *Hammond v. Straus, supra.* And see to the contrary *Boyce v. M. E. Church, supra,* which might be distinguishable in that it involved an effort to impose liability on a religious society and not a business corporation.

In the *Laflin & Rand* case, decided in the same year (1877) as the *Boyce* case, the Court, in an action against certain members of a corporation to make them individually liable for goods sold and delivered to the corporation, said (at p. 321) :

> "[The company] has been clothed with all the forms of a corporation by the laws of a neighboring State, and was in the exercise and use of the franchises conferred upon it. It was a corporation *de facto* at the time the goods were sold and delivered to it * * * and its existence as a corporation cannot be collaterally drawn into question.
>
> "To permit a recovery against the defendants, and thereby to say that they are to be regarded in law as a voluntary unincorporated association, would be a departure from all the cases. The debt was not created with them individually, but with a company act-

ing under a formal incorporation, and in the exercise of its corporate powers. This [creditor] dealt with it and gave it credit as a corporation. If its assets are not ample to pay, it is the misfortune of the creditor." [4]

See also the *Franz* case at p. 270 (of 24 Md.) and the *Bartlett* case at p. 498 (of 53 Md.) for similar statements of the law. From these cases it appears that where the parties have assumed corporate existence and dealt with each other on that basis, the Court will apply the estoppel doctrine on the theory that the parties by recognizing the organization as a corporation were thereafter prevented from raising a question as to its corporate existence.

When summarized, the law in Maryland pertaining to the *de facto* and estoppel doctrines reveals that the cases seem to fall into one or the other of two categories. In one line of cases, the Court, choosing to disregard the nature of the dealings between the parties, refused to recognize both doctrines where there had been a failure to comply with a condition precedent to corporate existence, but, whenever such noncompliance concerned a condition subsequent to incorporation, the Court often applied the estoppel doctrine. In the other line of cases, the Court, choosing to make no distinction between defects which

---

4. In this case, the first point the Court considered was whether the validity of the incorporation could be attacked by proving, *aliunde* the certificate of its incorporation, that certain prerequisites of the law had not been complied with in good faith. Then, after stating the established rule that a company incorporated according to all the required forms of law must be regarded by third persons as a corporation until it is dissolved by a judicial proceeding on behalf of the government that created it, the Court apparently assumed that as the company was in fact dealing with the third person on a corporate basis, it was to him a corporation *de facto*. Although this assumption seems (1) to have confused the *de facto* doctrine with the estoppel theory and (2) was unnecessary in view of the fact that the company might have been a corporation *de jure*, we believe that it did not affect the force of the holding with respect to the proposition that third persons who have dealt with a company on a corporate basis are precluded from impeaching its corporate existence.

were conditions precedent and those which were conditions subsequent, emphasized the course of conduct between the parties and applied the estoppel doctrine when there had been substantial dealings between them on a corporate basis.

Whether or not the decisions in the *Boyce* and *Maryland Tube* cases had the effect of repudiating the *de facto* doctrine in this state, as some of the text writers seem to think, is a question we do not reach in this case and therefore need not consider at this time. On the other hand, since it is clear that the *Maryland Tube* and *National Shutter Bar* cases are inconsistent with other Maryland cases insofar as they held (in relying on the statements in *Jones v. Aspen Hardware Co., supra*) that the doctrine of estoppel cannot be invoked unless a corporation has at least a *de facto* existence, both cases—*Maryland Tube* and *National Shutter Bar*—should be, and are hereby, overruled to the extent of the inconsistency. There is, as we see it, a wide difference between creating a corporation by means of the *de facto* doctrine and estopping a party, due to his conduct in a particular case, from setting up the claim of no incorporation. Although some cases tend to assimilate the doctrines of incorporation *de facto* and by estoppel, each is a distinct theory and they are not dependent on one another in their application. See 8 Fletcher, *op.cit.,* § 3763; *France on Corporations* (2nd ed.), § 29; 18 C.J.S., *op.cit.,* § 111h. Where there is a concurrence of the three elements necessary for the application of the *de facto* corporation doctrine, there exists an entity which is a corporation *de jure* against all persons but the state. On the other hand, the estoppel theory is applied only to the facts of each particular case and may be invoked even where there is no corporation *de facto*. Accordingly, even though one or more of the requisites of a *de facto* corporation are absent, we think that this factor does not preclude the application of the estoppel doctrine [5] in a proper case, such as the one at bar.

---

5. A third doctrine, called the modern "enterprise-entity theory," which in many respects is not unlike the estoppel theory applied in Maryland, is described in 1 Oleck, *Modern Corporation Law,* § 592. For an excellent analysis of the law concerning defective incorporation in general, see Chapter 25 of Vol. 1, §§ 584-595. See also the last sentence in § 591 (p. 839) where the author says

I.B.M. contends that the failure of the Bureau to file its certificate of incorporation debarred *all* corporate existence. But, in spite of the fact that the omission might have prevented the Bureau from being either a corporation *de jure* or *de facto,*[6] *Jones v. Linden Building Asso., supra,* we think that I.B.M. having dealt with the Bureau as if it were a corporation and relied on its credit rather than that of Cranson, is estopped to assert that the Bureau was not incorporated at the time the typewriters were purchased. *Laflin & Rand Powder Co. v. Sinsheimer, supra.* See also *Tulane Improvement Co. v. S. A. Chapman & Co.,* 56 So. 509 (La. 1911). In 1 Clark and Marshall, *Private Corporations,* § 89, it is stated:

> "The doctrine in relation to estoppel is based upon
> the ground that it would generally be inequitable to

that "in time the doctrine of 'de facto' corporation may become merely an historic example of legal conceptualism at its worst."

**6.** Those states which recognize the *de facto* doctrine are not in accord as to whether a corporation *de facto* may be created in spite of the failure to file the necessary papers. Some courts, without making clear in every instance whether a *de facto* corporation was meant or not, have stated that failure to file the required papers prevented the organizations from becoming a corporation and have held in effect that the persons acting as a corporation are a mere association or partnership. See, among others, *Slocum v. Head,* 81 N. W. 673 (Wis.); *Perrine v. Levin,* 123 N. Y. Supp. 1007; *H. J. Hughes Co. v. Farmers' Union Produce Co.,* 194 N. W. 872 (Neb.); *Elrod Slug Casting Mach. Co. v. O'Malley,* 57 F. Supp. 915 (D. Neb.). Other courts, without expressly deciding whether a *de facto* corporation was created, hold that the statutes of the state imply corporate existence prior to the filing of articles of incorporation. See, for example, *Merrick v. Reynolds Eng. & Gov. Co.,* 101 Mass. 381; *Granby Min. & Smelt. Co. v. Richards,* 8 S. W. 246 (Mo.). Still other courts hold that a *de facto* existence is not precluded by failure to file the articles of incorporation. See *Mason v. Stevens,* 92 N. W. 424 (S. D.); *Frawley v. Tenafly Transportation Co.,* 113 Atl. 242 (N. J. L.); *Tisch Auto Supply Co. v. Nelson,* 192 N. W. 600 (Mich.); *Berlin Bank v. Nelson,* 204 N. W. 92 (Mich.); *A. W. Mendenhall Co. v. Booher,* 48 S. W. 2d 120 (Mo. App.); *Culkin v. Hillside Restaurant,* 8 A. 2d 173 (N. J. Eq.). Numerous other cases on the problem are collected in 22 A.L.R. 376, 37 A.L.R. 1319. See also 1 Oleck, *Modern Corporation Law,* § 585, and the cases cited in the footnotes.

permit the corporate existence of an association to be denied by persons who have represented it to be a corporation, or held it out as a corporation, or by any persons who have recognized it as a corporation by dealing with it as such; and by the overwhelming weight of authority, therefore, a person may be estopped to deny the legal incorporation of an association which is not even a corporation *de facto*."

In cases similar to the one at bar, involving a failure to file articles of incorporation, the courts of other jurisdictions have held that where one has recognized the corporate existence of an association, he is estopped to assert the contrary with respect to a claim arising out of such dealings. See, for example, *Tarbell v. Page*, 24 Ill. 46 (1860); *Magnolia Shingle Co. v. J. Zimmern's Co.*, 58 So. 90 (Ala. 1912); *Lockwood v. Wynkoop*, 144 N. W. 846 (Mich. 1914); *John Lucas Co. v. Bernhardt's Estate*, 100 So. 399 (La. 1924).

Since I.B.M. is estopped to deny the corporate existence of the Bureau, we hold that Cranson was not liable for the balance due on account of the typewriters.

*Judgment reversed; the appellee to pay the costs.*